**UNITED STATES, Appellee,**

v.

**Specialist Four Mark A. ACIRENO, SSN 563–15–7083, United States Army, Appellant.**

**CM 442648.**

U. S. Army Court of Military Review.

30 Dec. 1982.

Captain John D. Martin, JAGC, argued the cause for the appellant. With him on the brief were Colonel William G. Eckhardt, JAGC, Lieutenant Colonel R. Rex Brookshire II, JAGC, and Major Patrick F. Crow, JAGC.

Captain David A. Brown, JAGC, argued the cause for the appellee. With him on the brief were Colonel R.R. Boller, JAGC, Major John T. Edwards, JAGC, and Captain Glenn D. Gillett, JAGC.

Before MILLER, KUCERA and BADAMI Appellate Military Judges.

## OPINION OF THE COURT

PER CURIAM:

This case involves a situation where the appellant was for all intents and purposes, in the status of "arrest" for a period of 153 days prior to his general court-martial trial.[1]

On 4 December 1981 the appellant was apprehended for fondling, while babysitting, the five-year old daughter of a fellow service-member. After providing a statement in which he confessed to the crime, appellant was released back to his unit.

In the early hours of the following day, 5 December 1981, his company commander, Captain (CPT) Mark Collier placed him on restriction, issuing an oral order that the appellant was not permitted to leave the barracks area until further notice. The only exception to this restriction was that *with an NCO escort* he was permitted to go to the *chapel,* to the *mess hall,* or to *"JAG."* The barracks area to which he was restricted included only the third and fourth floors of an on-post building. Moreover, CPT Collier testified that the appellant's civilian clothing was taken away, that he was kept out of formations, that he could not take physical training with the rest of the company, and that he could not attend the company's Christmas party which took place within the area to which he was restricted.[2]

As far as he was concerned, Captain Collier's order stood at the date of the trial with little modification. When pressed to explain why he put the accused on such a severe restriction, CPT Collier replied, "Because I couldn't put him in pretrial confinement."

It was not until 18 February 1982, 76 days after his apprehension, that the charge was preferred. Eleven days later, on 1 March 1982, the Article 32, UCMJ, investigating officer was appointed, but it wasn't until 22 March 1982, 98 days after his arrest and severe restriction, that the appellant's Article 32, UCMJ, hearing was conducted. A period of thirty-one days transpired between the time the investigating officer was appointed and the time he completed the investigation. Finally, on 20 April 1982, 137 days after the appellant had been apprehended, the convening authority referred the case to trial. On 6 May 1982, 153 days later, the appellant was brought to trial.

■ Military procedure under the Uniform Code of Military Justice recognizes three types of restraint prior to trial: confinement, arrest, and restriction. Confinement, the most severe form, is the physical incarceration of a person. Article 9(a), UCMJ, 10 U.S.C. § 809(a); *United States v.*

---

1. Pursuant to his pleas the appellant was convicted by exceptions of committing a lewd act upon a female under the age of sixteen years in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (1976). He was sentenced to a bad-conduct discharge, confinement at hard labor for two years, total forfeitures, and reduction to Private E–1. The convening authority, upon the advice of the staff judge advocate and in order to cure a denial of the accused's right to a speedy trial, reduced the confinement at hard labor to 18 months and otherwise approved the findings of guilty and the sentence.

2. The trial counsel questioned CPT Collier as follows:
   Q. Now, did you in any way change your previous orders..., with respect to the accused's restraint?
   A. Somewhere around the end of March—early April—Acireno was leaving the area by himself and I told him to get an escort. I then explained it to him, that he doesn't go

any place without an escort, because if anything happens to any little girl on this post he would be the one that would be subject. He's got to have somebody—he's got to be able to account for his presence at any time. And I told him that again approximately—I think it was the middle of April, at a party that his element was on.
Q. Okay. Very well. So, to date, from the 5th of December until the current date, your orders have been that the accused will remain restricted and will only leave the barracks area with an escort of a Corporal or above. Is that correct?
A. No. The execution of those I slackened. I never—at the time I talked to him I never said Corporal or above. I said make sure he's—you're with somebody.

There was evidence to indicate that the appellant was finally allowed to take PT with the rest of the unit.

*Hamilton,* 41 C.M.R. 724 (A.C.M.R.1970). Next in severity is "arrest," the moral or legal "restraint of a person by an order, . . . directing him to remain within certain specified limits." Article 9(a), UCMJ. Generally, a person in arrest status cannot be required to perform full military duties. This, however, does not prevent his being required to do ordinary cleaning or policing. *United States v. Vetter,* 13 C.M.R. 517 (N.B. R.1953); *see generally* paragraph 20, Manual for Courts-Martial, United States, 1969 (Revised edition) (MCM 1969) (Rev)).[3] Lastly, a person may be restricted, usually to the limits of some part of a military installation. Aside from its normally more generous boundaries, restriction differs from arrest in that a person may be required to participate in all military duties and activities of his organization while under the restriction. *See* paragraph 20*b,* MCM 1969 (Rev).

■ The procedural consequences of placing an accused in arrest or confinement prior to trial are set forth in Article 10, UCMJ, 10 U.S.C. § 810. Thus, "[w]hen a person . . . is placed in arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him." Arrest or confinement will also trigger the speedy trial guarantee of the Sixth Amendment and activate the presumption established in *Burton.*[4] *United States v. Schilf,* 1 M.J. 251 (C.M.A.1976).

In *Schilf,* restriction to the narrow confines of a squadron area, the terms of the restriction including an hourly sign-in procedure, was the equivalent of arrest or confinement for *Burton* purposes. More recently in *United States v. Walls,* 9 M.J. 88, 90 (C.M.A.1980), the Court concluded that "a withdrawal of a pass alone" does not constitute "an arrest within the meaning of Article 10." Finally, in *United States v. Burrell,* 13 M.J. 437, 440 (C.M.A. 1982), the Court held that a restriction to a hospital for treatment was not the equivalent of arrest or confinement for purposes of speedy trial requirements, since the accused was not limited either in time or place when he chose to leave the hospital, the only condition being that he call for an NCO escort.

■ In the case *sub judice* the accused was restricted to two floors of a four story building. While it is true that in *Schilf* the accused was required to sign in hourly, and this was apparently not the case here, the order in every other respect approximated that of an arrest and not a restriction. The accused was prohibited from performing his normal duties and instead assigned "maintenance around the barracks."[5] His clothing was taken, he was ordered not to attend formations, or participate in physical training with the rest of the company. With little modification, CPT Collier's order remained in full force and effect at least until the end of March. Finally, around the first of March the accused was allowed to work in the motor pool as a mechanic under the close supervision of the Motor Sergeant. Even assuming, *arguendo,* that this action finally terminated the accused's arrest status, the Government is still accountable for a period in excess of 90 days.

■ Consequently, there exists a presumption of a violation of Article 10, UCMJ, *Burton, supra,* requiring dismissal of the charges unless the Government successfully carries its heavy burden of showing reasonable diligence in processing them. *United States v. Rowsey,* 14 M.J. 151 (C.M. A.1982). On examining the facts of this case we are not satisfied that the Government met that burden. Like the staff judge advocate in his post-trial review, we

---

3. Arrest is most commonly imposed on commissioned officers who may be ordered into arrest in quarters in lieu of confinement. However, it is clear that arrest may properly extend to enlisted members. *See generally* paragraph 21(a)(2), Manual for Courts-Martial, United States, 1969 (Revised edition).

4. *United States v. Burton,* 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971).

5. Captain Collier, appellant's company commander, explained, "He stayed in the barracks and assisted in—if a window got broken, or if a light went out, he'd make coordination. . . ."

conclude that there was "no evidence of any movement by the Government from completion of the CID Report, 18 December 1981, to 18 February 1982, the date the charges were preferred," and that the "government failed to exercise reasonable diligence to accord the accused a speedy trial." Unlike the staff judge advocate, however, we reach a different conclusion concerning the remedy. While the record indicates no real prejudice to the appellant, we must follow the holding of *United States v. Rowsey, supra,* and apply what in our opinion amounts to an unjustifiably severe remedy of dismissal.[6]

Accordingly, the findings of guilty and the sentence are set aside and the charges are dismissed.

**6.** Aside from the ephemeral harm of mental anguish that attends all delays in criminal prosecution, appellant has suffered no injury, yet he demands a remedy. In our opinion, such an inflexible and severe remedy as dismissal of the charges is inappropriate. The appellant was not denied his constitutional right to a speedy trial under the Sixth Amendment. In *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Court set forth four factors to determine whether an accused has been deprived of that right. They are: (1) length of delay, (2) the reason for delay, (3) the accused's assertion of his right, and (4) prejudice to the accused. *Id.* at 530, 92 S.Ct. at 2191. The appellant in this case has not argued, nor do we find, that he was prejudiced by any delay in prosecution. At no time prior to trial did appellant assert his right to a speedy trial. Apparently he was content to let the passage of time dim the memories of Government witnesses and cool the ardor with which the Government initially viewed his prosecution. Finally, we note that appellant received an Article 15 for possession of marihuana during this period. As part of his punishment, CPT Collier imposed two weeks restriction. This was meaningless since appellant was already restricted to his barracks. Under such circumstances, reassessment of the sentence would suffice to adequately compensate appellant and deter future Government indifference to pretrial processing. However, we are bound by the holding in *United States v. Rowsey,* 14 M.J. 151 (C.M.A.1982) and must dismiss.