**UNITED STATES, Appellee,**

v.

**Specialist Four Steven R. SMITH, 494–64–9047, United States Army, Appellant.**

**CM 446184.**

U.S. Army Court of Military Review.

4 April 1985.

---

Captain H. Alan Pell, JAGC, argued the cause for the appellant. With him on the brief were Lieutenant Colonel Paul J. Luedtke, JAGC, and Captain Rita R. Carroll, JAGC.

Captain Denise A.G. Erickson, JAGC, argued the cause for appellee. With her on the brief were Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, and Major Larry D. Williams, JAGC.

Before SUTER, RABY and NAUGHTON, Appellate Military Judges.

## OPINION OF THE COURT

RABY, Senior Judge:

Consistent with his pleas, the appellant was convicted by a military judge sitting as a general court-martial of sodomy and of indecent acts with a female under the age of 16 years (appellant's daughter), in violation of Articles 125 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 925 and 934 (1982) [hereinafter cited as UCMJ], respectively. He was sentenced to confinement at hard labor for 14 years, forfeiture of all pay and allowances, reduction to the grade of E–1, and a dishonorable discharge. Pursuant to the terms of a pretrial agreement, the convening authority approved only so much of the sentence as provides for confinement at hard labor for 48 months, forfeiture of all pay and allowances for 48 months, reduction to the grade of Private E–1, and a dishonorable discharge.

On appeal, the appellant asserts both that he should be granted administrative credit for a 56-day period of pretrial restriction because the severity of the restriction rendered it tantamount to confinement and that the staff judge advocate's (SJA's) reply to the defense response to the SJA's review was prejudicially deficient. We will discuss both of these issues.

I

The appellant was confined in the Fort Richardson, Alaska, Area Confinement Facility during the period 20–26 April 1984. The appellant was subsequently restricted to his barracks building from 27 April to 22

June 1984, a period totaling 56 days for which he now requests administrative credit.

The terms of this restriction, which were delineated by a Letter of Restriction and which were not disputed at trial, prohibited the appellant from: using the phone without the permission of and in the presence of designated individuals; contacting his daughter or requesting that others contact his daughter for any purpose; performing normal duties; leaving his building without both express authorization and an escort; having visitors except between 1800 and 2000 hours on duty days and 1400–1800 hours on non-duty days in the first sergeant's office in the presence of the charge of quarters; and discussing the charges against him with visitors. Further, the appellant was required to: perform duties assigned by the company commander and first sergeant; sign in with the charge of quarters every 30 minutes between 1700 and 2200 hours on duty days and between 0800 and 2200 hours on non-duty days; remain in his barracks room between 2200 and 0530 hours on duty days and between 2200 and 0800 hours on non-duty days; and leave his barracks room door unlocked while in his room.

The determination whether the conditions of restriction are tantamount to confinement must be based on the totality of the conditions imposed. Many cases addressing this issue concern restriction as the equivalent of pretrial confinement for speedy trial purposes. *See, e.g., United States v. Schilf*, 1 M.J. 251 (C.M.A.1976) (restriction which limited the appellant to the narrow confines of the squadron area and which required that he sign in hourly was so restrictive as to equate to confinement for speedy trial purposes, mandating dismissal of the charges); *United States v. Weisenmuller*, 38 C.M.R. 434 (C.M.A.1968) (conditions of restriction including restriction to "a restriction barracks cubicle, the head and laundry room, operations area necessity store, mess hall, and direct routes to and from these places," hourly sign in between 1630 and 2130 hours on duty days and 12 times per day on non-duty days,

prohibition against leaving the sleeping area between 2200 and 0600 hours except to use the latrine, and prohibition from entering any place in which alcoholic beverages were served rendered the restriction tantamount to confinement, requiring dismissal of the charges for lack of speedy trial); and *United States v. Acireno*, 15 M.J. 570, 572 (A.C.M.R.1982) (Restriction to the two-floor barracks area of an on-post building with permission to go with a noncommissioned officer escort only to the chapel, messhall, and legal services office, coupled with the loss of civilian clothes and a prohibition against participating in formations and physical training, even absent a requirement that the appellant sign in periodically, was tantamount to an arrest status, mandating dismissal of the charges on speedy trial grounds. "While it is true that in *Schilf* the accused was required to sign in hourly, ... the order [in *Acireno*] in every other respect approximated that of an arrest and not a restriction."). *See also United States v. Nash*, 5 M.J. 37 (C.M.A. 1978) (restriction to guard shack was tantamount to confinement).

In the following cases, the Court found that the restraint imposed was not tantamount to confinement. *United States v. Powell*, 2 M.J. 6 (C.M.A.1976) (although the appellant had full access to all on-post facilities, his pass privilege was revoked and he was required to obtain the commander's or the first sergeant's permission to leave post); *United States v. Walls*, 9 M.J. 88 (C.M.A.1980) (conditions of restriction were similar to those considered in *United States v. Powell, supra*); *United States v. Marbury*, 4 M.J. 823 (A.C.M.R.1978) (the accused was restricted to his barracks from 2200 hours to 0530 hours each night but could use all common areas of the kaserne, such as the post exchange, snack bar, and service club, except those areas specifically assigned to the other batteries within the battalion); *see also United States v. Burrell*, 13 M.J. 437 (C.M.A.1982).

The military courts have, however, recently addressed the specific issue of administrative credit for pretrial restraint

tantamount to confinement, awarding day for day credit or other appropriate relief for such restraint. *See United States v. Mason,* 19 M.J. 274 (C.M.A.1985) (summary disposition) (The appellant was restricted to the dayroom with permission to go, under escort, only to the latrine, chapel, and messhall, was required to sign in hourly, and was prohibited from participating in training. The Court granted day for day administrative credit for the period of restriction.);[1] *United States v. DiMatteo,* 19 M.J. 903 (A.C.M.R.1985) (The appellant was incarcerated under guard in a basement storage room which was "unsanitary, dirty, and replete with camouflage nets and gas cans," allowed to speak to no one, allowed no exercise, and forbidden to read his Bible. On the seventh day of this restraint, he was found "unconscious under a mound of camouflage netting" and hospitalized. This Court awarded day for day administrative credit for this period and noted that the appellant may have been eligible for additional credit for illegal pretrial confinement pursuant to *United States v. Suzuki,* 14 M.J. 491 (C.M.A.1983), if he had so requested at trial.); *United States v. Carmel,* 4 M.J. 744 (N.C.M.R.1978) (The appellant was restricted, along with post-trial confinees and those serving nonjudicial punishment, to a restricted dorm between 0630 and 1630 hours unless performing duties assigned by the Chief Master-at-Arms. From 1630 to 2300 hours, the appellant could go outside in the immediate vicinity of the building for recreation, but had to sign out and in. Trips elsewhere required specific permission and escorts, except for trips to the dining facility, which entailed an elaborate sign out procedure rather than an escort. Bed checks were conducted at half-hour intervals from 2300 to 0600 hours. The appellant was required to muster eight times per day Monday through Saturday and six times on Sunday. When approved, visitors were permitted from 0900 to 1600 hours on weekends and holidays but were limited to the appellant's immediate family. On three or four occasions, the appellant was locked in a holding cell approximately six feet square which was used to hold sentenced prisoners awaiting transfer to confinement facilities and restricted personnel who created disturbances. The court held that the appellant's restriction under these conditions violated Article 13, UCMJ, 10 U.S.C.A. § 813 and found sentence reassessment the appropriate remedy. "The conditions here imposed were oppressive, and some of the terms of appellant's restraint bore no relationship to the purposes of his restriction and were unnecessary to his presence." 4 M.J. at 748.).

■ Analysis of the cited cases reveals that the courts closely scrutinize those factors which reflect substantial impairment of the basic rights and privileges enjoyed by service members. As a result of this factual scrutiny, levels of restraint can be identified which fall somewhere on a spectrum that ranges from "restriction" to "confinement." If the level of restraint falls so close to the "confinement" end of the spectrum as to be tantamount thereto, an appellant is entitled to appropriate and meaningful administrative credit against his sentence. *See United States v. Mason, supra.*

■ Some of the relevant factors to be considered in determining the nature of an accused's pretrial restraint are: the nature of the restraint (physical or moral), the area or scope of the restraint (confined to post, barracks, room, etc.), the types of duties, if any, performed during the restraint (routine military duties, fatigue duties, etc.), and the degree of privacy enjoyed within the area of restraint. Other important conditions which may significantly affect one or more of these factors are: whether the accused was required to sign in periodically with some supervising authority; whether a charge of quarters or other authority periodically checked to ensure the accused's presence; whether the accused was required to be under armed or

1. This Court has taken judicial notice of the record of trial in this case in order to discern the facts upon which the Court of Military Appeals' decision was premised.

unarmed escort; whether and to what degree accused was allowed visitation and telephone privileges; what religious, medical, recreational, educational, or other support facilities were available for the accused's use; the location of the accused's sleeping accommodations; and whether the accused was allowed to retain and use his personal property (including his civilian clothing).

In analyzing the factors relevant to this case, we find that none of the cited cases are factually identical. We note that this appellant's half-hourly sign-in requirement is more restrictive than that included in the restrictions condemned in *United States v. Mason, supra, United States v. Schilf, supra,* and *United States v. Weisenmuller, supra;* that his restriction to a single building is similar to that disapproved in *United States v. Acireno, supra,* and *United States v. Schilf, supra;* that the requirement that he be escorted on all departures from his barracks, including the messhall, chapel, and legal office, is comparable to that addressed in *United States v. Mason, supra,* and *United States v. Acireno, supra; cf. United States v. Carmel, supra;* that the prohibition against his performance of normal duties was similar to the prohibition in *United States v. Mason, supra,* and *United States v. Acireno, supra;* that the required presence of the charge of quarters during all authorized visits rendered appellant's restriction more severe that that afforded relief in *United States v. Carmel, supra;* and that the prohibition against departing his sleeping area during nighttime hours was equivalent to that noted in *United States v. Weisenmuller, supra,* and *United States v. Carmel, supra.*

■ We find that the conditions of the appellant's restriction were lawful, as they related to the need to ensure the appellant's presence at trial, the legitimate military interest in protecting the five-year-old dependent victim from further molestation, and the legitimate military interest in precluding appellant's exposure to the tempta-

tions of further aberrant sexual misconduct.[2] *See* Manual for Courts-Martial, United States, 1969 (Revised edition), paragraphs 20*b* and 174*b*. However, we nonetheless find that, when the results of our factual analysis are·duly recorded on the "restraint" to "confinement" spectrum, these onerous conditions clearly rendered the appellant's restriction tantamount to confinement.

■ The government has challenged the timeliness of appellant's request for administrative credit because it was asserted for the first time on appeal following accepted pleas of guilty. The Court finds that this issue was raised at trial, albeit inartfully, when trial defense counsel addressed the court during presentencing argument as follows:

> We'd ask you also to consider that *the restriction* and pretrial confinement has had a very awakening effect on Specialist Smith. We'd ask you to *give him credit for—for it,* and that it has—it is proof and evidence that no lengthy confinement in this case is necessary.

(Emphasis added.) The Court finds that this statement, coupled with the admission into evidence of the Letter of Restriction outlining the limits of the appellant's restriction, was sufficient to raise this issue at the trial level.

■ Even if not effectively raised at trial, however, the Court notes that the question under consideration is not the legality of the appellant's confinement, *see United States v. Martinez,* 19 M.J. 744, 747 (A.C. M.R.1984), which has been resolved in the government's favor, but rather the appellant's eligibility for administrative credit for a period of restriction which we have found tantamount to confinement. Clearly, the issue of this eligibility may be raised for the first time on appeal. *See United States v. Mason, supra; United States v. Allen,* 17 M.J. 126 (C.M.A.1984). Accordingly, we will direct that the appellant receive 56 days' administrative credit for the

2. A court order issued by the State of Alaska prohibited the appellant from contacting his

daughter without supervision and required that the appellant attend counseling sessions.

period spent in restriction tantamount to confinement. *United States v. Mason, supra.* We feel compelled, however, to bring to the attention of The Judge Advocate General of the Army, the United States Court of Military Appeals, and military judges the fact that since the decision in *United States v. Mason, supra,* this issue is surfacing repeatedly both during review pursuant to Article 66, UCMJ, 10 U.S.C.A. § 866, and in petitions for extraordinary relief. Expeditious and effective review has been inhibited by the absence of a factual development at the trial level.

In order to alleviate this problem, we believe that when an accused has been subjected to any form of pretrial restraint, the government must disclose this fact on the record. We suggest that when the government discloses any form of pretrial restraint, the military judge conduct an inquiry to determine the relevant facts and rule whether such restraint is tantamount to confinement.[3] His ruling would then be subject to review for abuse of discretion. We consider this procedure imperative, as this Court is ill equipped to gather facts *de novo* and because, as we read *Mason* and *Allen,* the issue of administrative credit currently is not waived by the defense's failure to raise it at the trial level.[4]

## II

The appellant additionally asserts that the initial failure of the SJA to inform the convening authority (CA) of the appellant's 56-day restriction and the SJA's subsequent inaccurate and misleading advice to the CA regarding his clemency responsibil-ities in light of this restriction mandate a new review and action.

We agree with the appellant that both the SJA's initial review and his response were inaccurate and misleading. We find, however, that these errors related strictly to the propriety of the sentence as affected by the appellant's pretrial service of 56 days of restriction. We have determined that the appellant should be granted 56 days' administrative credit and we find that such credit is the maximum relief which the CA would have granted had the SJA's advice been accurate, particularly in light of the appellant's sentence reduction from the 14 years' adjudged confinement at hard labor to the 48 months' approved confinement by virtue of the appellant's negotiated pretrial agreement. Under these circumstances, we find that no further relief is warranted.

The findings of guilty and the sentence are affirmed, except that the appellant shall be given 56 days' administrative credit against his sentence to confinement for the period of restriction served prior to trial.

Chief Judge SUTER and Judge NAUGHTON concur.

---

**3.** If the military judge determines that the restraint is tantamount to confinement, he should order that the appropriate administrative credit be given by the confinement facility commander. Moreover, in a trial with members, the court members may be instructed that the pretrial restraint is a matter to be considered in extenuation and mitigation, that the accused will receive the specified administrative credit for the time spent in restraint, and that if the specified credit is not sufficient to compensate the appellant for the time spent in pretrial restraint, the court may also take this factor into account in adjudging an appropriate sentence. *See United States v. Stark,* 19 M.J. 519, 527

(A.C.M.R.1984), *pet. for review filed,* 19 M.J. 288 (C.M.A.1985).

**4.** While a confinement facility can reasonably make ministerial decisions to credit an accused with pretrial confinement served when this time period is accurately reflected in the trial record, it is an entirely different matter to administratively resolve an accused's assertion that periods of pretrial restraint were "tantamount to confinement." We therefore suggest that military law return to the state in which it existed prior to *United States v. Allen* or, at a minimum, prior to *United States v. Mason.*