Specialist Four Willie J. WASHINGTON, 587–01–7926, United States Army, Petitioner,

v.

Colonel Donald P. GREENWALD, Commander, United States Army Correctional Activity, and the United States of America, Respondents.

Miscellaneous Docket No. 1985/9. CM 446797.

U.S. Army Court of Military Review.

May 28, 1985.

Lieutenant Colonel William P. Heaston, JAGC, Major Edwin D. Selby, JAGC, and Captain J. Andrew Jackson, JAGC, were on the pleadings for petitioner.

No pleadings were required of the respondents.

Before SUTER, RABY and NAUGHTON, Appellate Military Judges.

OPINION OF THE COURT ON PETITION FOR EXTRAORDINARY RELIEF

PER CURIAM.

On 2 November 1984, appellant was tried by a general court-martial composed of officer and enlisted members at Fort Wainwright, Alaska. He was convicted, pursuant to his pleas, of assault with a dangerous weapon, violation of a regulation, and communicating threats in violation of Articles 128, 92, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 928, 892, and 934 (1982), respectively. He was sentenced to confinement at hard labor for one year, forfeiture of $300.00 pay per month for 12 months, and reduction to the lowest enlisted grade. The convening authority approved the sentence.

This case is currently before the court pursuant to a Petition for Extraordinary Relief in the nature of a Writ of Habeas Corpus, in which the petitioner requests that the court direct administrative credit for an 88-day period of pretrial restriction which the petitioner asserts was tantamount to confinement. *See United States v. Smith,* 20 M.J. 528 (ACMR 1985); *United States v. Allen,* 17 M.J. 126 (CMA 1984). The application of such credit would result in petitioner's immediate release

from confinement.[1] Having found the instant petition an appropriate vehicle for seeking the requested relief, *see Dettinger v. United States*, 7 M.J. 216 (CMA 1979); *Thacker v. United States*, 16 M.J. 841 (NMCMR 1983); *see also Kelly v. United States*, 1 M.J. 172 (CMA 1975); *Gragg v. United States*, 10 M.J. 732 (NCMR), *rev'd on other grounds*, 10 M.J. 180 (CMA 1980) (summary disposition); *Hart v. Kurth*, 5 M.J. 932 (NCMR 1978), we will consider the merits of the request by petitioner for administrative credit.

■ The nature of the petitioner's pretrial restriction was not a matter raised at trial. The facts concerning this issue are derived from: a letter to Captain Grue, Trial Defense Counsel, United States Army Correctional Activity (USACA), from petitioner's former first sergeant, Subject: Washington, Willie J., dated 28 January 1985 (Appendix A); a letter to Sergeant Crockett, USACA, from petitioner's former commander, Subject: Restriction of Washington, Willie J., dated 26 November 1984 (Appendix B); and an affidavit by petitioner, Subject: Conditions of pretrial restriction, dated 19 March 1985 (Appendix C). Based upon the facts presented in these documents interpreted in the light most favorable to the petitioner, we conclude that the petitioner's pretrial restriction was not tantamount to confinement and that therefore no administrative credit is warranted.

In reaching this decision, we have found the following facts. During the 88 days of pretrial restriction, petitioner was restricted to the confines of the company area, his place of duty, the mess hall, and the chaplain's office. In order to leave these limits, he was required to obtain permission and to be accompanied by an escort in the grade of E–5 or above. For the first three weeks, an escort was also required when petitioner went to and returned from work. During non-duty hours and non-duty days, he was allowed to go to any place on post if

he obtained permission and was escorted. Petitioner performed normal duties during this entire period. He was required to move from his family's on-post housing to a billet room directly adjacent to the charge of quarters' (CQ) office. He was restricted to this room after 2200 hours. Petitioner enjoyed unrestricted visitation privileges and phone use. It was necessary for him to sign in at the CQ's office every hour when he was not at work. While at work, petitioner was required to remain within the sight of both his squad leader and platoon sergeant and, during the first three weeks, he could not leave the enclosed work area. After the first three weeks, petitioner could travel during duty hours to any place on post where he needed to go without an escort if he obtained prior permission. Petitioner was allowed to visit his family for two to three hours each weekend providing an escort was available to accompany him. He was permitted neither to discuss his case with others nor to consume alcohol.

Relying upon these facts, we find that the pretrial restrictions, while substantial, were lawful and were not tantamount to confinement. As suggested by this court in *United States v. Smith*, 20 M.J. at 531, we have closely scrutinized the conditions of restraint and attempted to place them on a spectrum which ranges from "restriction" to "confinement". We do not find the level of restraint in the instant case to be as onerous as those conditions found to be tantamount to confinement in *United States v. Smith*, 20 M.J. 528.

*United States v. Smith* can be distinguished from the instant case. Smith was not permitted to carry on his normal duties, whereas Washington did perform usual duties. Smith's visitation rights and phone privileges were restricted; neither of these privileges was limited for Washington. Smith was also required to sign in every half-hour, whereas Washington was required to sign in every hour only when he

---

1. Petitioner is scheduled to be released from confinement on 16 August 1985, which is less than 88 days from the date of this opinion. If administrative credit were applied, petitioner's minimum release date would be 20 May 1985.

was not at work or running pre-approved errands. In view of the substantial differences between the conditions imposed upon Smith and those required of Washington, we find that Smith's restraints were more oppressive than Washington's and were more comparable to confinement than the less severe restrictions imposed upon Washington.

In *United States v. Wiggins*, 20 M.J. 823 (ACMR 1985) (released for publication 23 May 1985), this court held that administrative credit should not be granted against Wiggins' sentence. The factual dissimilarities between *United States v. Wiggins* and the instant case include the fact that Wiggins could not use the phone and had restricted visitation rights, while Washington maintained full phone and visitation privileges. Wiggins was also restricted to the first floor of the barracks unless he had both permission and an escort, whereas Washington could travel without an escort throughout the company area and to his place of duty (after the first three weeks), the messhall, and the chaplain's office. Although Wiggins' restraints were more onerous in this respect, he enjoyed more freedom in his sign-in obligations. Like Washington, Wiggins was to sign in every hour on duty day evenings. Wiggins, however, was merely required to sign in every four hours on weekends, while Washington's hourly sign-in requirement continued during non-duty days.

At the time of his pretrial restraint, Wiggins was out-processing and was therefore not reporting to his usual work place, physical training, or formations. The terms of his restriction did not inhibit Wiggins' ability to out-process. Similarly, Washington performed normal duties during the term of his restriction. Both Wiggins and Washington were prohibited from consuming alcohol and were restricted to their billet rooms at night.

A comparison between *United States v. Wiggins* and the present case shows similar degrees of impairment of basic rights and privileges. The more and less onerous conditions of restraint balance, rendering the levels of restraint comparable. Relying upon *United States v. Wiggins*, CM 446655, and *United States v. Smith*, 20 M.J. 528, and cases cited therein, we find that the 88-day period of pretrial restraint imposed upon petitioner was not tantamount to confinement, and he is therefore not entitled to administrative credit.

Accordingly, the petitioner's petition for extraordinary relief is denied.

## APPENDIX A

### DEPARTMENT OF THE ARMY

568th Transportation Company (AVIM)

Fort Wainwright, Alaska 99703

January 28, 1985

SUBJECT: Washington, Willie J.

Tom Grue

2235 Buckingham

Apt. 9 Westchester Park Apts.

Manhattan, Kansas 66502

Dear Sir:

In response to our recent phone conversation, I would like to submit the following facts. SP4 Washington was apprehended by the Military Police for suspension of Aggravated Assault at approximately 1730 hours, Friday, 3 August 1984. After the MP completed their interview, SP4 Washington was released to the unit on DD Form 629 at 2045 hours, 3 August. The NCO that picked up SP4 Washington escorted SM to his quarters, and directed him to stay home thru the weekend, and stay out of trouble. On Monday, 6 August 1984, acting on the advice from JAG trial counsel and the Battalion Commander, the Acting Company Commander directed me to call SP4 Washington in and place him on the following restrictions:

a. Restricted to the confines of the company area, to include his place of duty, the mess hall, and chaplains office. If he needed to go anywhere during duty hours, an E–5 escort was required.

b.  During non-duty hours and days, sign in with the CQ every hour on the hour until 2200 hours.

c.  SM was quartered next door to the CQ so that the CQ could keep an eye on him.

d.  Refrain from all alcoholic beverages.

Upon the return of the Company Commander, I briefed him and he directed me to keep the above restrictions in effect.

After approximately three weeks, with the Unit Commander's approval, SP4 Washington's restrictions were somewhat altered.  During duty hours, SP4 Washington was allowed to go anywhere on post unaccompanied he needed to go, provided he cleared it either through his platoon sergeant or myself prior.  During non-duty hours and days, he was allowed to leave the company area on a case by case basis provided he was accompanied by an E–5 or above, and he had prior approval, location and escort, from again either his platoon sergeant or myself.  During these times, he was allowed to go to his on post quarters, accompanied by an escort.

· . If you have any further questions, please feel free to contact me at any time.

Sincerely,
/s/Gary A. Curt
GARY A. CURT
1SG, USA
First Sergeant

### APPENDIX B

### DEPARTMENT OF THE ARMY

568th Transportation Company

Fort Wainwright, Alaska 99703–6530
                    26 November 1984

AFZT–AV–568
SUBJECT: Restriction of Washington, Willie J.

5th Unit Admin
USACA
ATTN: SGT Crockett
Fort Riley, Kansas 66442

1.  Reference foncon between you and 1SG Curt on 21 Nov 84.
2.  SP4 Washington, Willie J. was apprehended for aggravated assault and oth-

er lesser included offenses on 3 Aug 84.  He was released to the unit on DD Form 629 at 2044 hrs, 3 Aug 84.  SM was at that time advised to remain at his quarters for the remainder of the weekend by his squad leader, SSG Coen.

3.  After a review of the facts, SP4 Washington was placed on the following restrictions effective 6 Aug 84:

a.  During normal duty hours, restricted to Post, and only those places he needed to go.

b.  During non-duty hours, restricted to the company area, to include the dining facility and chapel.  With prior coordination on a case by case approval from 1SG or Platoon Sergeant, SP4 Washington could depart the company area under the direct supervision of an E–5 or above.

c.  At no time was he to go near anybody involved in his case, nor consume any alcoholic beverage of any type.

4.  SP4 Washington followed these guidelines religiously, and was a model soldier during this most trying period.

/s/Michael E. Freeman
MICHAEL E. FREEMAN
MAJ, AV
Commanding

### APPENDIX C

### AFFIDAVIT

I, Willie J. Washington, swear that the following is true and correct:

On 6 August 1984 I was placed on restriction.  I was ordered to move from my on-post quarters to a billets room.  That billets room was adjacent to the Charge of Quarters office.  Whenever I was not at my normal duty station, I was required to sign-in with the Charge of Quarters every hour.  I was also required to be in my room by 2200 hours every evening.  Although I went to my normal work assignment, for the first three weeks of restriction I was required to travel to and from my worksite under escort.  Those escorts were required to be in the grade of E–5 or above.  Further, while at work I was in-

structed to, at all times, remain in the sight of both my squad leader (E–6) and my platoon sergeant (E–7). I was not permitted to leave our enclosed work area. After the first three weeks, I was permitted to travel to and from work without escort. At all other times, however, regardless of day, time, or purpose, I was required to be under escort whenever I left the barracks. Those escorts also were required to be above the grade of E–5.. I was never permitted to leave post.

This restriction placed obvious hardship on my wife and our four young children. I was permitted to visit my family only on weekends, and for only a two or three hour period of time. As with all activities outside of the billets, an escort went with me to my home and was present inside my house during any visit. Further, if an escort in the grade of E–5 or above was not available, I was not permitted to visit my family.

I abided by all of the requirements of my restriction from 6 August until 2 November 1984.

/s/Willie J. Washington
WILLIE J. WASHINGTON

Sworn to before me on the <u>19th</u> day of <u>March</u>, 1985.

/s/Captain Thomas A. Grue
THOMAS A. GRUE
CPT, JAGC