**UNITED STATES, Appellee,**

v.

**Private E–1 Larry J. AMOS, 218–92–0900, United States Army, Appellant.**

**SPCM 22008.**

U.S. Army Court of Military Review.

30 June 1986.

---

For Appellant: Lieutenant Colonel Paul J. Luedtke, JAGC, Major Dale K. Marvin, JAGC, Captain Brian R. St. James, JAGC (on brief).

For Appellee: Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Captain Samuel J. Rob, JAGC (on brief).

Before O'ROARK, WILLIAMS and KENNETT, Appellate Military Judges.

## OPINION OF THE COURT

KENNETT, Judge:

Tried by a military judge sitting as a special courtmartial, appellant was convicted, pursuant to his pleas, of possessing and distributing marijuana, breaking restriction, and absence without leave, in violation of Articles 112a, 134, and 86, Uniform Code of Military Justice [hereinafter cited as UCMJ], 10 U.S.C. §§ 912a, 934, and 886 (1982 and Supp. I 1983), respectively. His sentence to a bad-conduct discharge, confinement for four months, and forfeiture of $390.00 per month for four months was approved by the convening authority.

On appeal, appellant asserts three errors, all concerning his pretrial restriction. Specifically, he argues: (1) his restriction from 1 October 1985 to 15 October 1985 was tantamount to confinement, thereby requiring a grant of administrative credit pursuant to *United States v. Mason,* 19 M.J. 274 (C.M.A.1985) (summary disposition), and *United States v. Smith,* 20 M.J. 528 (A.C. M.R.), *pet. denied,* 21 M.J. 169 (C.M.A. 1985); (2) he be granted sentence relief because he was punished prior to trial in violation of Article 13, UCMJ, 10 U.S.C. § 813; and (3) the trial judge's determination that his restriction from 16 October 1985 to 25 October 1985 was tantamount to confinement requires a grant of additional sentence credit because of the government's failure to comply with the provisions of Rule for Courts-Martial [hereinafter cited as R.C.M.] 305, Manual for Courts-Martial, United States, 1984 [hereinafter cited as MCM, 1984], citing *United States v. Gregory,* 21 M.J. 952 (A.C.M.R.), *certificate for review filed,* 22 M.J. 177 (C.M.A.1986).[1]

We find the limits of appellant's restriction from 1 October to 15 October not tantamount to confinement. *See Wiggins v. Greenwald,* 20 M.J. 823 (A.C.M.R.), *writ appeal denied,* 20 M.J. 196 (C.M.A.1985); and *Washington v. Greenwald,* 20 M.J. 699 (A.C.M.R.), *writ appeal denied,* 20 M.J. 324 (C.M.A.1985), *reaffirmed sub. nom. United States v. Washington,* CM 446797 (A.C.M.R. 3 Jul. 1985) (unpub.). We likewise disagree with appellant's second contention. Appellant was not being subjected to pretrial punishment, but was merely placed under a more strict form of restraint in accord with the analysis in *United States v. Otero,* 5 M.J. 781 (A.C.M.R.), *pet. denied,* 6 M.J. 121 (C.M.A.1978). Appellant's final contention that he be granted additional administrative credit under R.C.M. 305(k) warrants more in-depth analysis. We find that the particular period of restriction, although considered by the trial judge to be tantamount to confinement for administrative credit purposes under both *Mason* and *Smith,* does not warrant additional credit under R.C.M. 305(k).

---

1. Appellant's case was tried on 27 November 1985. *United States v. Gregory* was not decided until 26 February 1986.

Rule for Courts-Martial 305 delineates certain procedures which must be followed when soldiers are placed in pretrial confinement. The remedy for noncompliance with the procedures is an administrative credit against the sentence to confinement "at the rate of 1 day credit for each day of confinement served as a result of such noncompliance." R.C.M. 305(k). The rule applies only to "pretrial confinement," which, although defined as "physical restraint ... depriving a person of freedom ...," R.C.M. 304(a)(4) and 305(a), is not further explained. Neither is the term "physical restraint" defined. The issue, thus, is how broadly the term "pretrial confinement" should be considered in light of the amorphous description "physical restraint."

In *Mason*, the Court of Military Appeals held that Mason should be credited with 42 days of pretrial confinement, 35 of which were spent in "pretrial restriction equivalent to confinement." *Mason*, 19 M.J. at 274. The court held that the principle set out in *United States v. Schilf*, 1 M.J. 251 (C.M.A.1976), was applicable in determining the amount of credit to be given. *Mason*, 19 M.J. at 274. The summary disposition in *Mason* was expanded by a panel of this court in *Smith*. There, based on its reading of various cases cited in its opinion, the court determined that, in resolving the administrative credit issue, one should consider the "totality of the conditions," *Smith*, 20 M.J. at 530, surrounding the restriction on a restriction to confinement "spectrum."[2] *Smith*, 20 M.J. at 531.

The above analysis was recently taken a step further in *United States v. Gregory*. There, a panel of this court held that, when a determination has been made that pretrial restriction is tantamount to confinement, the provisions of R.C.M. 305(h) and (i) apply. *Gregory*, 21 M.J. at 955–56. As those provisions were violated in Gregory's case, the court determined that administrative credit should be granted pursuant to R.C.M. 305(k). *Id.* at 956. The court interpreted the MCM, 1984 as evidencing the President's intent that R.C.M. 305 apply to restriction tantamount to confinement. *Id.* at 955.

■ In the case at bar, appellant argues *Gregory* controls our disposition of the error cited. Conversely, the government urges us not to follow *Gregory*. They argue *Gregory* causes uncertainty, and that the process will place severe hardship on commanders and staff judge advocates in, first, deciding whether restriction is equivalent to confinement; and, second, in requiring that a probable cause hearing be held, pursuant to R.C.M. 305(i), whenever pretrial restriction is imposed. They also argue R.C.M. 305 was not intended to apply to restriction equivalent to confinement. Although we agree that the process would cause some hardship to commanders and their legal advisers, hardship alone is insufficient reason on which to base our decision. A probable cause hearing for actual pretrial confinement is likewise a hardship, but the President has deemed such a hearing to be appropriate.[3] Our analysis of R.C.M. 305, however, is contrary to *Gregory's* analysis. We interpret the President's intent in granting administrative credit for violations of R.C.M. 305(h) and (i) to be limited to those instances where an accused is actually locked in a confinement facility,[4] or is under the control of a guard who has the duty to physically oppose any unauthorized departure by the accused.

The starting point involving construction

---

**2.** *Smith's* spectrum analysis has alternately been praised and damned by government and defense counsel alike, depending on the position which best suits their interest in a particular case. We feel the credit determination is sometimes strained, and has led to disproportionate results.

**3.** "[T]he procedures for imposition and review of pretrial confinement had to be compatible

with existing resources." Analysis of R.C.M. 305, Appendix 21, MCM, 1984, at A21–14.

**4.** Some examples of a "confinement facility" are a civilian jail or prison, a military police detention cell, a Navy brig, an Army stockade, or a "basement storage room under guard," *United States v. DiMatteo*, 19 M.J. 903, 904 (A.C.M.R.), *pet. denied*, 20 M.J. 305 (C.M.A.1985).

of R.C.M. 305 is the language itself.[5] *Cf. Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) (construction of statute begins with statute itself). The rule defines confinement as "physical restraint," R.C.M. 305(a), but is otherwise silent as to the type of confinement intended. We note, however, that words should "be interpreted as taking their ordinary, contemporary, common meaning." *Diamond v. Diehr*, 450 U.S. 175, 182, 101 S.Ct. 1048, 1054, 67 L.Ed.2d 155 (1981), *quoting*, *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). Confinement previously has been defined as "the physical incarceration of a person." *United States v. Acireno*, 15 M.J. 570, 571 (A.C.M.R. 1982), *citing*, Article 9(a), UCMJ, and *United States v. Hamilton*, 41 C.M.R. 724 (A.C. M.R.1970).[6] *Black's Law Dictionary* has defined incarceration as "imprisonment; confinement in a jail or penitentiary." [7] We realize, however, that in interpreting intent we should not tie ourselves to dictionary definitions. We also note that the term "confinement" is not defined with pristine clarity and might be subject to various interpretations. *Cf. United States v. Leonard*, 21 M.J. at 69. As such, we have considered extrinsic sources so that our construction "accurately reflects the intention" of the President. *Id.* These sources confirm our belief that R.C.M. 305 was intended to apply to the plain meaning of the word confinement.

The issue of what constitutes confinement has arisen many times in terms of whether a conviction for escape from confinement under Article 95, UCMJ, 10 U.S.C. § 895, may be sustained. *See United States v. Ellsey*, 16 C.M.A. 455, 37 C.M.R. 75 (C.M.A.1966); *United States v. Ramsey*, 33 C.M.R. 566 (A.B.R.1963). The thrust of those cases is clear: the physical restraint contemplated by an escape from confinement charge is such that "the guard in charge of the prisoner possess some *physical* means ... capable of and available to *physically* oppose and resist any unauthorized departure by the accused...." *United States v. Hamilton*, 41 C.M.R. at 726 (emphasis in original). Moreover, the guard must have the duty to use such physical force.[8] *Id.* The strict construction of the term confinement, defined as physical restraint for Article 95 purposes, is consistent with our interpretation of confinement for application of R.C.M. 305. Both contemplate actual physical incarceration,[9] not *Smith*-type restriction.

Additionally, the *Gregory* court, in distinguishing restriction from confinement, stated:

> [R]estriction basically involves moral restraint [as opposed to the physical restraint of confinement] ... the soldier is ordered to remain within specified limits, and he becomes morally and legally obligated to comply with the terms of this order. *No locks or guards* block the soldier's freedom of locomotion; only his

---

5. In determining the President's intent, we have employed rules of interpretation generally applied to statutory construction. *See United States v. Leonard*, 21 M.J. 67, 69 (C.M.A.1985).

6. Article 9(a), UCMJ, 10 U.S.C. § 809(a), defines confinement as physical restraint.

7. Black's Law Dictionary, 685 (5th ed. 1979).

8. Notably, the record is silent as to any duty to physically prevent appellant from departing the limits of his restriction. An "escort" (a term frequently encountered in cases of this nature, *see Gregory*, and cases cited therein) is not a "guard." The function of an escort is to monitor the restricted soldier and to accompany him to the various places within the terms of restric-

tion, but an escort is under no duty to physically oppose an unauthorized departure.

9. The Court of Military Appeals has consistently used the terms "confinement" and "incarceration" interchangeably. *See, e.g., United States v. Palmiter*, 20 M.J. 90, 96 (C.M.A.1985); *United States v. Heard*, 3 M.J. 14, 16, 21 (C.M.A.1977); *United States v. Manalo*, 1 M.J. 452 (C.M.A. 1976); *United States v. Larner*, 1 M.J. 371, 373 (C.M.A.1976); *Dunlap v. Convening Authority*, 23 C.M.A. 135, 136, 48 C.M.R. 751, 752 (1974); *United States v. Cleveland*, 15 C.M.A. 213, 214, 35 C.M.R. 185, 186 (1965); *United States v. Bayhand*, 6 C.M.A. 762, 766, 21 C.M.R. 84, 88 (1956); *United States v. Perkins*, 1 C.M.A. 502, 4 C.M.R. 94, 95 (1952).

moral conscience thereafter circumscribes his movements.

*Gregory,* 21 M.J. at 955 (emphasis added). In our view, even conditions of severe restriction, such as to one room, as in *Mason,* or to a single building, as in *Smith,* with or without sign-in requirements,[10] still amount only to restriction, not confinement, as the individual so restricted is restrained only by his conscience, not by locks or guards, and is physically able to disregard the limits of his restriction and to ignore sign-in requirements.

As further support for the position here taken, we note that the issue of restriction equivalent to confinement in *Schilf* arose nearly eight years prior to the effective date of the present Manual and the provisions of R.C.M. 305. *Schilf* has been cited on numerous occasions since its publication. Despite its prominence, however, *Schilf* was not discussed by the drafters with regard to R.C.M. 305. Inasmuch as the previously recognized *Schilf* proposition was not mentioned, we can assume the President intended only actual confinement to trigger the provisions of R.C.M. 305.

■ In sum, the practice of restricting a soldier prior to trial is a proper exercise of a commander's powers and is dictated by the Army's special need for discipline, unit morale and integrity. Increasing the severity of a restriction is likewise, as in the case at bar, a proper exercise of power. Because restriction may be considered equivalent to confinement for administrative credit purposes, however, does not also mandate that the provisions of R.C.M. 305 apply. In determining the rule's applicability, the definition of familiar language should be confined to its familiar scope. Thus, the word "confinement" in R.C.M. 305 means actual confinement. To define the term otherwise would be to supply judicially a meaning where such meaning was not envisioned. Because we believe R.C.M. 305 pertains to actual confinement, versus restriction later judicially deemed equivalent to confinement, appellant's request for additional credit is without merit.

We have considered the issues personally raised by appellant, and find them to be without merit.

The findings of guilty and the sentence are affirmed.

Chief Judge O'ROARK and Senior Judge WILLIAMS concur.

---

10. *See Smith,* 20 M.J. at 530–31, for a discussion of various cases involving sign-in requirements.

*See also Washington,* 20 M.J. at 700, and *Wiggins,* 20 M.J. at 824.