# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
POND, MORRIS, and JUETTEN
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist DANIEL C. WRIGHT**
**United States Army, Appellant**

ARMY 20230333

Headquarters, I Corps
Jessica R. Conn and Robert E. Murdough, Military Judges
Colonel John J. Merriam, Staff Judge Advocate

For Appellant: Colonel Philip M. Staten, JA; Lieutenant Colonel Autumn R. Porter, JA; Major Robert D. Luyties, JA; Major Devin V. Vickers, JA (on brief).

For Appellee: Major Lisa Limb, JA; Colonel Richard E. Gorini, JA; Captain Anthony J. Scarpati, JA (on brief).

29 July 2025

---
MEMORANDUM OPINION
---

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent*

POND, Senior Judge:

Appellant raises multiple assignments of error before this court, one of which merits discussion but no relief.[1] Appellant alleges his trial defense counsel provided ineffective assistance, and that but for this deficient performance, there is a reasonable probability the result of the proceeding would have been different. We disagree.

---

[1] We have given full and fair consideration to appellant's other assignments of error, to include matters submitted personally by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find they lack merit and warrant neither additional discussion nor relief.

## BACKGROUND

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of two specifications of possession of child pornography, one of which being with the intent to distribute, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 134 (2019) [UCMJ]. Per the terms of the plea agreement, the military judge sentenced appellant to a bad-conduct discharge, 589 days of confinement, and reduction to the grade of E-1. The convening authority took no action on the findings and sentence and approved appellant's request for deferment and waiver of automatic forfeitures.

On appeal before this court, appellant claims he was denied effective assistance of counsel when his trial defense counsel failed to request 259 days of confinement credit to which appellant believes he was entitled and failed to present this same evidence in mitigation and extenuation at sentencing. In support of his claim, appellant submitted an affidavit to this court, stating that on 7 July 2022, about a year before his trial, his command issued a military protective order (MPO), prohibiting appellant from communicating with his wife and her children and removed appellant from the home and into the barracks. Appellant was also prohibited from leaving the barracks unless escorted. While escorted, he was only allowed to take care of essential needs and was not allowed to leave the military installation under any circumstances.

In his affidavit, appellant also states his company commander took his computer and cell phone, which "significantly restricted [his] ability to communicate with anyone in [his] support system and [appellant] was not provided any alternate means of communication." He and his wife asked the command to rescind the MPO on several occasions, but it was not until eight months after the MPO was issued, on 23 March 2023, that the command ultimately rescinded it. Appellant states when he inquired whether he was "entitled to anything based off the time I was under the MPO and other restrictions," his defense attorney informed him that because the command had already lifted the MPO, he was not entitled to any confinement credit. Based on this advice, appellant did not claim any confinement credit when asked by the military judge during his guilty plea.

After considering appellant's affidavit, we ordered an affidavit from his trial defense counsel, Captain (CPT) CC. In response, CPT CC stated he understood appellant "was subject to a verbal order revoking his off-post pass privileges" and an order from his former company commander "not to possess a smart phone or computer" but was unaware appellant was confined to his barracks and believed he had freedom of movement on the installation after work and on weekends. Captain CC stated that the commander gave appellant "the option of purchasing a non-internet capable phone, but [appellant] did not want one." He also learned that appellant had phone access through his escort and commander, which appellant had

2

successfully used to contact CPT CC and likewise, CPT CC had used to successfully contact appellant. Appellant also had access to a phone at the Change of Quarters (CQ) desk during non-work hours. Captain CC believed the escort was required because of appellant's lack of transportation to work and his medical and legal appointments, as well as lack of a phone which in turn was based on appellant's financial limitations and choice.

Upon CPT CC's review of the evidence, he "believed the command was justified in initiating and maintaining the MPO" but after confirming both appellant and his wife wanted the MPO lifted, and only a few weeks after his first client meeting with appellant, CPT CC successfully requested the command rescind the MPO, over objection of the military justice advisor.

Captain CC did not believe appellant was entitled to confinement credit for either the MPO or the constraints imposed. Appellant "performed military duties despite his restricted network access" due to the pending charges, "enjoyed the privacy of his barracks without an armed guard or escort," the command's daily accountability of appellant "was related to his ongoing mental, medical, and legal issues," and accountability over the weekend "was limited to two times a day through the CQ desk." Further, appellant "was permitted to attend religious, medical, recreational, educational, and other support facilities, including the base gym." Appellant "was granted exceptions to his restrictions upon request." He retained his personal property other than the electronic devices seized by law enforcement for containing contraband. Appellant was able to "access the internet at the base library with an escort," which appellant discussed during his unsworn statement.

Because CPT CC did not believe appellant was entitled to confinement credit, he strategically chose not to file a motion for Article 13 credit, or other forms of pretrial confinement credit, because he "wanted the Military Judge to focus on [appellant's] rehabilitative potential" and other factors he believed "would positively influence the Military Judge's sentence rather than give the Government an opportunity to remind the Military Judge why restrictions were put in place, why it was necessary to leave them in place, and how they were not 'tantamount to confinement.'"

The stipulation of fact admitted at trial states the chain of command removed appellant from his home and took him to an in-patient psychiatric ward after his wife confronted him about the child pornography on his iPhone and appellant "stated that he wanted to die." Appellant's wife testified at trial that she did not request the command initiate the MPO but acquiesced to it because she was told it was for appellant's benefit to allow him to focus on his mental health.

## LAW

### A. Ineffective Assistance of Counsel

We review allegations of ineffective assistance of counsel de novo. *United States v. Palik*, 84 M.J. 284, 288 (C.A.A.F. 2024) (citing *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007)). "To prevail on an ineffective assistance claim, the appellant bears the burden of proving that the performance of defense counsel was deficient and that the appellant was prejudiced by the error." *United States v. Captain*, 75 M.J. 99, 103 (C.A.A.F. 2016) (citing *Strickland v. Washington*, 466 U.S. 668, 698 (1984)).

"With respect to *Strickland's* first prong, courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012) (quoting *Strickland*, 466 U.S. at 689). This presumption can be rebutted by "showing specific errors that were unreasonable under prevailing professional norms." *United States v. McConnell*, 55 M.J. 479, 482 (C.A.A.F. 2001) (citations omitted). "As to the second prong, a challenger must demonstrate 'a reasonable probability that, but for counsel's [deficient performance] the result of the proceeding would have been different.'" *Datavs*, 71 M.J. at 424 (quoting *Strickland*, 466 U.S. at 694) (alteration in original). "'It is not enough to show that the errors had some conceivable effect on the outcome . . . .'" *Id.* (quoting *Strickland*, 466 U.S. at 695). When a claim of ineffective assistance of counsel is based on a failure to make a motion, appellant "must show that there is a reasonable probability that such a motion would have been meritorious." *United States v. Napoleon*, 46 M.J. 279, 284 (C.A.A.F. 1997).

Courts may analyze the two prongs under *Strickland* independently such that if appellant fails to meet either prong, the claim must fail. *Strickland*, 466 U.S. at 697 (stating an appellate court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies"). "If it is easier to dispose of an [IAC] claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

When a claim of ineffective assistance of counsel is raised on appeal, this court applies the principles established in *United States v. Ginn*, 47 M.J. 236 (C.A.A.F. 1997), to determine whether we are able to decide the case without further proceedings. Consequently, we may consider affidavits, but we do not have the discretion "to decide disputed questions of fact pertaining to a post-trial claim, solely or in part on the basis of conflicting affidavits submitted by the parties." *Id.* at 243. Such questions of fact must be resolved in a post-trial evidentiary hearing. *Id.* at 248. On the other hand, if the facts are uncontroverted or if we are able to

resolve any dispute about the material facts raised in competing affidavits from the record of trial or the appellate filings, we may decide the legal issue without further proceedings. *Id.*

## *B. Confinement Credit*

A soldier, who is not confined pending trial, may be entitled to confinement credit if he or she is subject to pretrial restrictions so severe as to render the restrictions tantamount to confinement. *United States v. Mason*, 19 M.J. 274 (C.M.A. 1985). Our predecessor court outlined several relevant factors to determine the nature of the pretrial restraint including:

- the nature of the restraint (physical or moral),
- the area or scope of the restraint (confined to post, barracks, room, etc.),
- the types of duties, if any, performed during the restraint (routine military duties, fatigue duties, etc.), and
- the degree of privacy enjoyed within the area of restraint.

*United States v. Smith*, 20 M.J. 528, 531 (A.C.M.R. 1985). The *Smith* court also outlined other important conditions which may significantly affect one or more of the above factors, such as:

- whether the accused was required to sign in periodically with some supervising authority;
- whether a charge of quarters or other authority periodically checked to ensure the accused's presence;
- whether the accused was required to be under armed or unarmed escort;
- whether and to what degree the accused was allowed visitation and telephone privileges;
- what religious, medical, recreational, educational, or other support facilities were available for the accused's use;
- the location of the accused's sleeping accommodations; and
- whether the accused was allowed to retain and use his personal property (including his civilian clothes).

*Id.* at 531-32.

## DISCUSSION

The two affidavits before us – appellant's affidavit and the affidavit from his trial defense counsel – are not in material conflict with one other. Given that there is no material conflict of the facts, the two affidavits, along with the record of trial,

provide us all necessary information to decide appellant's allegations of ineffective assistance of counsel. Therefore, we are able to resolve appellant's claim of ineffective assistance of counsel without ordering a post-trial evidentiary hearing. *See Ginn*, 47 M.J. at 248.

Turning first to appellant's claim that his trial defense counsel was ineffective for failing to claim confinement credit for his pretrial restrictions, we find no prejudice. Based on the evidence before us, we fail to find a reasonable probability that such a motion would have been meritorious. That is, we do not find the pretrial conditions were so severe as to render them tantamount to confinement and entitle appellant to 259 days of *Mason* credit. Appellant was not confined to his barracks room. While he was not permitted to leave the installation or his barracks building without an escort, he was permitted, as appellant alleged, to take care of his essential needs on post while escorted. This included access to religious, medical, recreational, educational, and other support facilities on the installation, including the gym and the library. While appellant was a married soldier who was ordered to move out of his family quarters and not contact his family pending his mental health treatment and law enforcement investigation, we do not find, under a totality of the circumstances, that such restrictions were tantamount to confinement. The command granted exceptions upon appellant's request, and ultimately, when his defense counsel requested the MPO to be cancelled, appellant's command complied.

While the command ordered appellant to refrain from possessing a smart phone or computer while in the barracks, this order did not extend to the use of all electronics, only those that were internet-enabled.. Nor was appellant prohibited from using the telephone at work or the CQ desk or the internet at the library, the latter of which appellant referenced using during his unsworn statement. While the command's order may have, as appellant averred, "significantly restricted" his ability to communicate with people in his support system, the order was not unreasonable in light of the charged offenses, nor did it cut off all means of communication, as demonstrated by appellant's ability to contact CPT CC and CPT CC's ability to contact appellant. One of defense's presentencing witnesses, Sergeant First Class (SFC) ███ testified that after appellant's suicidal ideations, SFC ███ "put a lot of time, effort, and energy to make sure that [appellant] was okay" and that along with others from the unit, made sure "he had the necessary things he needed being in the barracks."[2]

---

[2] Appellant has not claimed confinement credit under Article 13, UCMJ, and thus, the focus of our analysis is on the objective conditions of appellant's restrictions rather than the intent of the government's actions such as whether there was an intent to punish or whether there was a legitimate and non-punitive government objective. *See United States v. Howell*, 75 M.J. 386 (C.A.A.F. 2016).

Additionally, appellant was only subject to minimal periodic sign-in requirements, including a daily accountability with the command during the work week and a two-times-a-day check-in requirement at the CQ desk during weekends. He maintained a normal degree of privacy in his barracks room and continued to perform his normal work duties as an information technology specialist within the restriction of not having a security clearance due to the pending investigation. Thus, under a totality of the circumstances, we conclude appellant would not have been entitled to confinement credit under *Mason* for his pretrial conditions.

Turning to appellant's second claim – that his trial defense counsel's performance was deficient for failing to raise the matter in extenuation and mitigation – we conclude counsel's conduct falls within the wide range of reasonable professional assistance. During presentencing, CPT CC made the tactical decision to focus on appellant's rehabilitative potential rather than appellant's pretrial restrictions which would have given the government an opportunity to remind the military judge of why the restrictions were necessary in the first place. But that did not mean trial defense counsel omitted all mention of appellant's pretrial restrictions. During presentencing, CPT CC elicited testimony during cross of a government's witness as well as direct testimony of defense witnesses about the conditions of the MPO and the negative impact the MPO had on appellant, his wife, and her two children. The MPO, which was in place for about nine months, was the most significant and severe of the restrictions discussed in appellant's affidavit. Trial defense counsel not only elicited testimony about the negative effect the MPO had on appellant and his young stepchildren, but requested the military judge consider the MPO during sentencing argument. Defense counsel's tactical decisions were reasonable.

Thus, we conclude appellant has failed to meet his burden on his ineffective assistance of counsel claim.

Separately, in this case where government counsel moved to admit the child sexual abuse material as a prosecution exhibit during sentencing, we take a moment to remind military justice practitioners that there is no statutory or regulatory requirement to do so at a guilty plea. *United States v. Rominger*, ARMY 20080423, 2009 CCA LEXIS 315, at *4-5 (Army Ct. Crim. App. 8 June 2009) (mem. op.). "The factual basis of the accused's plea is established by his admissions, not by physical evidence." *United States v. Guy*, ARMY 20180292, 2019 CCA LEXIS 129, at *5 (Army Ct. Crim. App. 21 Mar. 2019) (mem. op.).

We understand that "the government may have a legitimate interest in admitting the images or videos as aggravation evidence on sentencing." *Id.*, at *6. But this can be accomplished, as it was done here, by a description of the images and videos contained in the stipulation of fact. In appellant's case, the description of the images and videos comprise over seventeen of the twenty-four pages of the

stipulation of fact. Even so, the government still moved to introduce the images and videos of child pornography as an exhibit during sentencing. And government counsel did so after the military judge ensured the government had read this court's opinion in *Guy* and confirmed their staff judge advocate was aware of their decision to include the images and videos of child sexual abuse in the record as a prosecution exhibit. Nevertheless, when the military judge gave the government an opportunity to put their justification on the record for including the exhibit, the trial counsel declined to do so.

We commend the military judge's actions here. We reiterate, once again, that counsel and their supervisors should be sensitive that "child pornography involves real people who are done no great service when images of their rape as a child are needlessly included in a record for strangers to review." *Id.*, at *4.

## CONCLUSION

The findings of guilty and the sentence are AFFIRMED.

Judge MORRIS and Judge JUETTEN concur.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court

8