UNITED STATES, Appellee,

v.

Private First Class Troy A. DAVIS, 006–62–7721, United States Army, Appellant.

CM 447116.

U.S. Army Court of Military Review.

23 Aug. 1985.

* Corrected.

and First Lieutenant Karen Taylor, JAGC, were on the pleadings for appellee.

Before RABY, CARMICHAEL, and ROBBLEE, Appellate Military Judges.

## OPINION OF THE COURT.

RABY, Senior Judge.

Appellant was convicted, pursuant to his pleas, of one specification of absence without leave (AWOL), eleven specifications of housebreaking, and seven specifications of larceny, in violation of Articles 86, 130 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 930 and 921 (1982) [hereinafter referred to as UCMJ], respectively.

After considering all competent evidence of record in mitigation, extenuation and aggravation, including a detailed stipulation of fact recounting the nature of the criminal ventures of appellant and his two co-actors, the military judge imposed a sentence of dishonorable discharge, forfeiture of all pay and allowances, reduction to Private (E–1), and confinement for fifteen years. The convening authority approved the sentence as adjudged, except that pursuant to the terms of the pretrial agreement,[1] he approved only so much of the confinement as provided for incarceration for a period of five years.

Appellant asserts that the staff judge advocate's post-trial recommendation is prejudicially deficient because it fails to discuss "the highly disparate" sentence received by a co-actor in a closely related case. *See generally, United States v. Kent,* 9 M.J. 836, 839 n. 9 (A.F.C.M.R.1980). Specifically, appellant directs our attention to the fact that Sergeant Charles J. Scozzari, Jr.,[2] entered pleas of guilty to five specifications of housebreaking and to one specification of larceny. He also entered pleas

Lieutenant Colonel Paul J. Luedtke, JAGC, Lieutenant Colonel William A. Pope, II, JAGC, and Captain Rita R. Carroll, JAGC, were on the pleadings for appellant.

Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, Lieutenant Colonel Joseph A. Rehyansky, JAGC,

1. Pursuant to the pretrial agreement, initiated by appellant and accepted by the general court-martial convening authority, the convening authority agreed to disapprove any adjudged confinement in excess of five (5) years. Any other lawful punishment adjudged could be approved. It is a well-established and sound provision of law that "[a]bsent evidence to the contrary, accused's own sentence proposal is a reasonable indication of its probable fairness to him." *United States v. Hendon,* 6 M.J. 171, 175 (C.M.A. 1979), *citing, United States v. Johnson,* 41 C.M.R. 49, 50 (C.M.A.1969).

2. Appellant and his accomplices were members of the 212th Military Police Company at the time of their criminal transgressions.

of not guilty to one specification of housebreaking and to one specification of larceny. Sergeant Scozzari was convicted pursuant to his guilty pleas and was sentenced by the military judge to be dishonorably discharged, to forfeit all pay and allowances, to be confined for five years, and to be reduced to the grade of Private (E–1). In the commission of each offense of which Sergeant Scozzari was convicted, he had acted as an accomplice of the appellant. The convening authority approved only so much of Sergeant Scozzari's sentence as provided for a dishonorable discharge, forfeiture of $400.00 pay per month for ten months, confinement for ten months, and reduction to the grade of Private (E–1).

▆ In resolving this issue, we find, as a fact, that appellant's criminal misconduct was substantially greater than that of Sergeant Scozzari's. Not only was appellant a prime perpetrator of the offenses to which Sergeant Scozzari acted as a lookout, but appellant also committed offenses in which Sergeant Scozzari did not participate.[3] Considering this fact, coupled with our knowledge that a dishonorable discharge normally terminates a greater accrued retirement equity for a sergeant than for a private, we are not prepared to conclude that a "highly disparate sentence was received by a co-actor in a closely related case" as claimed by the appellant in his assignment of error.

We are further concerned by appellant's assertions that if a co-actor receives a highly disparate sentence in a closely related case, the staff judge advocate is required to discuss this fact in his post-trial recommendations. Article 60(d), UCMJ, 10 U.S.C. § 860(d), pertinently provides that "[t]he recommendation of the staff judge advocate ... shall include such matters as the President shall prescribe by regulation...." In implementation of this statute, Rules for Courts-Martial [hereinafter cited as R.C.M.] 1106(d)(3) prescribes the required contents of a staff judge advocate's post-trial recommendations. A discussion of a co-actor's sentence is not one of those required matters. R.C.M. 1106(d)(3)(A)–(E).[4]

▆ Who then is responsible for presenting this type of relevant information to the convening authority? We believe Congress intended this responsibility to rest primarily with the appellant's defense counsel,[5] and the President, in imple-

---

3. For example, on the weekends of 2–4 June 1984 and of 3–4 July 1984, the appellant and Private (E–2) Raymond M. Booska participated in certain housebreakings and larcenies to which Sergeant Scozzari was not a party. Moreover, when the criminal investigation focused on appellant, he fled from Germany on 23 October 1984 to the United States and remained absent without authority until apprehended by the Lincoln, Maine, Police Department on 16 November 1984.

4. The Air Force Court of Military Review concluded in *United States v. Kent,* 9 M.J. at 839 n. 9 that "[w]here the issue of sentence comparison is reasonably raised, it is incumbent upon the staff judge advocate to fully discuss it in his post-trial review." Whatever viability this case may have enjoyed, it is no longer the law. Exercising his *statutory authority* under Article 36, UCMJ, 10 U.S.C. § 836, the President promulgated R.C.M. 1106, to implement the new streamlined procedures contained in the Military Justice Act of 1983. The *only* matters required to be contained in the staff judge advocate's post-trial recommendations are those listed in R.C.M. 1106(d)(3). All other matters are optional under R.C.M. 1106(d)(4). Information con-

cerning sentence disparity is an example of the type of information that the law no longer requires the staff judge advocate to address in his post-trial recommendation.

5. The legislative history to the Military Justice Act of 1983, reflects the following:

[A]s a result of court decisions *the staff judge advocate's legal review has become a cumbersome document,* consuming substantial time in preparation, and often too lengthy to be of any use to the convening authority. Regrettably, it can constitute an independent source of appellate litigation even when the underlying case is free of error....

\* \* \* \* \*

*The bills, however, authorize the accused to submit matters for the convening authority to consider prior to acting on the sentence.*

(Emphasis added). Hearings on S. 2521 (The Military Justice Act of 1982) Before the Subcomm. on Manpower and Personnel of the Senate Comm. on Armed Services, 97th Cong., 2nd Sess. 18 (1982) (statement of William H. Taft IV, General Counsel, Department of Defense) "The legislation ... authorizes the accused to submit matters for the convening authority to consider

mentation of the Military Justice Act of 1983, has provided a procedure in the Manual for Courts-Martial, 1984, to enable counsel to timely accomplish this responsibility.[6] R.C.M. 1105(b) or R.C.M. 1106(f)(4),[7] as appropriate, provides the proper avenue of procedure for counsel to use in submitting matters to the convening authority which are favorable to an accused, or which regard the sufficiency and accuracy of the staff judge advocate's post-trial recommendations. Failure to make timely use of such procedures normally constitutes a waiver of the right to submit such matters to the convening authority or to challenge the sufficiency of the staff judge advocate's review and recommendations because such matters were omitted therein. R.C.M. 1105(d) and R.C.M. 1106(f)(6).[8] In this case, assuming arguendo, that a co-actor had received a "highly disparate" sentence, we would conclude that appellant's failure to timely present this matter under R.C.M. 1105 or R.C.M. 1106 constituted such waiver. Thus, two distinct reasons exist for our finding that

this assignment of error is without merit: (a) the facts do not support a finding that a co-actor received a "highly disparate" sentence, and (b) waiver applies.

■ Notwithstanding waiver, had such a factual situation existed, we could still consider the co-actor's "highly disparate" sentence when we independently reviewed appellant's approved sentence for sentence appropriateness. *See United States v. Olinger,* 12 M.J. 458, 461 (C.M.A.1982); *see also United States v. Snelling,* 14 M.J. 267, 268 (C.M.A.1982).

■ Considering the gravamen and continuing pattern of appellant's felonious misconduct, the circumstances surrounding these offenses, including appellant's assignment to duty in a military police company, appellant's apprehension in termination of his period of AWOL, his general technical aptitude area score of 109, his prior unblemished military record, the terms of his pretrial agreement plea and all

---

prior to acting on the case.". S.Rep. No. 53, 98th Cong., 1st Sess. 7, *see also id.* at 18–19 (1983); Hearings on S. 974 (The Military Justice Act of 1983) Before the Subcomm. on Military Personnel and Compensation of the House Comm. on Armed Services, 98th Cong., 1st Sess. 40 (1983) (statement of William H. Taft IV, General Counsel, Department of Defense) H.R. Rep. No. 549, 98th Cong., 1st Sess. 15, 18–19 (1983), U.S.Code Cong. & Admin.News 1983, p. 2177.

6. Normally when counsel elects not to submit matters on behalf of an accused, during the post-trial process, as hereinafter discussed, waiver will occur. But, in certain extremely grievous situations which we are not confronted with in the case at bar, such an election may give rise to an issue of inadequacy of counsel. *See generally,* R.C.M. 502(d)(6), Discussion at (E)(iii) regarding the post-trial duty of defense counsel concerning the submission of matters to the convening authority.

7. Under R.C.M. 1106(f)(4) counsel for the accused may submit information in writing for the convening authority's consideration, regarding any matter in the recommendation *believed*

*to be* erroneous, *inadequate,* or misleading, *and may comment on any other matter.* An omission in the post-trial recommendation may be the subject of such a comment because it would constitute either a perceived inadequacy or "any other matter" within the meaning of the rule.

8. The waiver doctrine will not apply to omissions and inaccuracies in the staff judge advocate's review which constitute "plain error." Based on the legislative history of the Military Justice Act of 1983, rarely will an omission or inaccuracy in the post-trial recommendation now rise to the level of plain error. "If the accused has any objections to the staff judge advocate's recommendations, those objections *must be raised* in the response; failure to do so constitutes a waiver of the objection to the staff judge advocate's recommendation and the effect of the recommendation on the convening authority's action. *If there is an objection to an error* that is deemed to be prejudicial under Article 59 [UCMJ] during appellate review, *it is the Committee's intent that appropriate corrective action be taken by appellate authorities without returning the case for further action by a convening authority.*" (Emphasis added). S.Rep. No. 53, 98th Cong., 1st Sess. 21 (1983).

other relevant matters of record in extenuation, mitigation, or aggravation, we find the approved sentence of appellant to be appropriate within the meaning of Article 66(c), UCMJ, 10 U.S.C. § 866(c).

The findings of guilty and the sentence are affirmed.

Judge CARMICHAEL and Judge ROBBLEE concur.