**UNITED STATES, Appellee,**

v.

**Private (E–1) Richard D. ECOFFEY, 503–92–4886, United States Army, Appellant.**

**CM 447363.**

U.S. Army Court of Military Review.

23 Oct. 1986.

For Appellant: Captain Joseph Tauber, JAGC (argued); Lieutenant Colonel Arthur L. Hunt, JAGC, Major Marion E. Winter, JAGC, Major Stephen R. Dooley, JAGC, Captain David L. Carrier, JAGC (on brief).

For Appellee: Captain Karen L. Taylor, JAGC (argued); Lieutenant Colonel Gary F. Roberson, JAGC, Lieutenant Colonel Joseph A. Rehyansky, JAGC, Captain Denise K. Vowell, JAGC (on brief).

Before RABY, CARMICHAEL and ROBBLEE, Appellate Military Judges.

## OPINION OF THE COURT ON REMAND

ROBBLEE, Judge:

Pursuant to his pleas, appellant was convicted by a military judge sitting as a general court-martial of two specifications of distribution of marijuana, absence without leave and failure to repair in violation of Articles 112a and 86, Uniform Code of Military Justice, 10 U.S.C. §§ 912a and 886 (1982 and Supp. II 1984) [hereinafter cited as UCMJ]. The military judge sentenced appellant to a bad-conduct discharge, confinement for fifteen months, and total forfeitures. The convening authority approved the sentence as adjudged. On 13 August 1985, this court affirmed the findings and the sentence. *United States v. Ecoffey*, CM 447363 (A.C.M.R. 13 Aug. 1985) (unpub.). On 16 December 1985, the United States Court of Military Appeals, 21 M.J. 374, remanded the case to this court for consideration of the issue raised by an affidavit submitted by appellant asserting for the first time that he had been subjected to restriction tantamount to confinement. Subsequently, we ordered that the issues specified below be briefed by counsel for appellant and appellee.

### I

WHETHER APPELLANT IS ENTITLED TO DAY–FOR–DAY CREDIT AGAINST HIS CONFINEMENT FOR THE TIME HE SPENT IN PRETRIAL RESTRICTION; *I.E.*, WHETHER HIS

RESTRICTION WAS TANTAMOUNT TO CONFINEMENT.

## II

WHETHER THIS COURT SHOULD ISSUE A MANDATE THAT AFTER A SPECIFIED DATE ALL CASES TRIED AFTER SAID DATE INVOLVING ISSUES OF FAILURE TO GRANT *ALLEN* OR *MASON* CREDIT UNDER RULE FOR COURTS–MARTIAL 305 WILL BE WAIVED IF NOT TIMELY RAISED AT TRIAL. *SEE UNITED STATES V. MASON*, 19 M.J. 274 (C.M.A.1985) (SUMMARY DISPOSITION); *UNITED STATES V. GREGORY*, 21 M.J. 952 (A.C.M.R.), *CERTIFICATE FOR REVIEW FILED*, 22 M.J. 177 (C.M.A.1986). *SEE ALSO UNITED STATES V. CRUZ*, 20 M.J. 873 (A.C.M.R.1985) (EN BANC), *PETITION GRANTED*, 22 M.J. 100 (C.M.A.1986); *UNITED STATES V. MARTINEZ*, 19 M.J. 744 (A.C.M.R.1984), *PETITION DENIED*, 21 M.J. 27 (C.M.A.1985).

Affidavits[1] filed subsequent to trial reflect that appellant was restricted to a bed adjacent to the unit Charge of Quarters' (CQ) desk on 28 January 1985. Further, after his release from pretrial confinement on 7 February 1985, appellant was late for duty and disrespectful to noncommissioned officers and officers in his chain of command. As a result, he received nonjudicial punishment, a record of which cannot now be located, and was restricted for fourteen days.[2] Although the precise date is undetermined,[3] this restriction apparently began between 7 February 1985 and 12 February 1985. Appellant was restricted to his place

of duty, place of worship, and defense counsel's office. After completing the restriction incident to the imposition of nonjudicial punishment, appellant, except for a ten-day period in early April 1985, was required to sign in with the CQ hourly after duty hours when not in his room. Beyond the unit he was permitted to go anywhere he needed to go, on or off post, if escorted by an unarmed escort in the grade of E–5 or above. While thus restricted, appellant occupied a barracks room with another soldier, was not permitted to wear civilian clothes, had access to a pay telephone, and, under the supervision of the CQ, performed duties in the unit area. During the aforementioned ten-day period in April, appellant was subjected to a twenty-four-hour-a-day unarmed guard whose duties were to "watch and escort" appellant continuously while he was restricted as above.

 We must first resolve Specified Issue II, the question of whether waiver should be applied in the case *sub judice*. In doing so we are mindful that, heretofore, the question of eligibility for administrative credit for periods of restriction deemed tantamount to confinement has been permitted to be raised for the first time on appeal, *United States v. Mason*, 19 M.J. 274 (C.M.A.1985) (summary disposition); *United States v. Smith*, 20 M.J. 528 (A.C.M.R.), *petition denied*, 21 M.J. 169 (C.M.A.1985); *see also United States v. Allen*, 17 M.J. 126 (C.M.A.1984) (on appeal, appellant credited for period spent in pretrial confinement facility), although waiver for failure to object to data as to restraint could have been applied. *See* Manual for Courts-Martial, United States, 1969 (Rev.

---

**1.** We note that appellate counsel found it necessary to file five affidavits (Appendices A–E) in the case at bar in order to marshal the facts pertinent to the nature of appellant's restriction. We conclude the obvious: questions of fact are best resolved at trial when memories are fresh and those with knowledge of the facts are readily available.

**2.** Inasmuch as this period of restriction was imposed as Article 15, UCMJ, punishment we need not examine it for the purpose of determining whether it constituted pretrial restric-

tion tartamount to confinement. *See* Manual for Courts-Martial, United States, 1984 [hereinafter cited as M.C.M., 1984], Rule for Courts-Martial [hereinafter cited as R.C.M.] 304(f) ("Pretrial restraint is not punishment and shall not be used as such."), and M.C.M., 1984, Part V, para. 5c(2) (restriction is the least severe deprivation of liberty which may be imposed under the provisions of Article 15, UCMJ, 10 U.S.C. § 815).

**3.** *See* Note 1, *supra*.

ed.), para. 75b (1), (Ch. 5, 1 Apr. 1982); R.C.M. 1001(b)(1). We believe that this policy has well-obviated the potential for injustice as it permitted defense counsel to internalize the significance of the developing law in the area of restriction tantamount to confinement.[4] However, more than eighteen months have elapsed since *Mason* was decided, substantially eroding, we believe, the rationale on which such a nonwaiver policy was originally based. Moreover, we note that military courts have faithfully applied the waiver doctrine to matters pertaining to pretrial punishment and illegal pretrial confinement, except in circumstances where the appellant was a pretrial confinee required to live and work with sentenced prisoners. *See United States v. Cruz*, 20 M.J. 873, 892–93 (A.C.M.R.1985) (en banc), *petition granted*, 22 M.J. 100 (C.M.A.1986); *United States v. Martinez*, 19 M.J. 744 (A.C.M.R.1984), *petition denied*, 21 M.J. 27 (C.M.A.1985); *United States v. Peacock*, 19 M.J. 909 (A.C.M.R.), *petition denied*, 20 M.J. 205 (C.M.A.1985); *United States v. DiMatteo*, 19 M.J. 903 (A.C.M.R.), *petition denied*, 20 M.J. 305

(C.M.A.1985). If the waiver doctrine is extended to defense claims of restriction tantamount to confinement not raised for the first time at trial, a greater measure of consistency of law will be achieved. Further, we are convinced that the extension of the waiver doctrine is consistent with the ends of justice, judicial economy, and the expanded responsibilities of defense counsel imposed by the M.C.M., 1984. *See United States v. Davis*, 20 M.J. 980, 982 (A.C.M.R.), *petition denied*, 21 M.J. 315 (C.M.A.1985). Accordingly, although we decline to apply waiver in the instant circumstances, in cases tried ninety days or more from the date of this decision, failure by defense counsel to raise the issue of administrative credit for restriction tantamount to confinement by timely and specific objection to the presentation of data at trial concerning the nature of such restraint[5] will waive consideration of the credit issue on appeal.[6]

■ Because we have declined to apply waiver in the instant circumstances, we have examined the record of trial in light of

---

**4.** *See, e.g., United States v. Gregory*, 21 M.J. 952, 959 (A.C.M.R.) ("We believe that restriction is not a form of confinement; however, restriction tantamount to confinement is in essence a form of confinement and is not a form of restriction."), *certificate for review filed*, 22 M.J. 177 (C.M.A.1986); *but compare with United States v. Amos*, 22 M.J. 798 (A.C.M.R.1986) (declining to follow Gregory and concluding that R.C.M. 305 pertains only to instances of actual confinement and not to so-called restriction tantamount to confinement); *Mason*, 19 M.J. 274 (42 days of administrative day-for-day credit awarded since "appellant was in pretrial confinement for 7 days and in pretrial restriction *equivalent to confinement*" for 35 days) (emphasis added).

**5.** R.C.M. 1001(b)(1) provides in pertinent part that:

Trial counsel shall inform the court-martial of the data on the charge sheet relating to ... the duration and nature of any pretrial restraint.... *If the defense objects to the data as being materially inaccurate or incomplete, or containing specified objectionable matter, the military judge shall determine the issue. Objections not asserted are waived.*
(Emphasis added.) *See also* Army Regulation 27–10, Legal Services: Military Justice, para. 5–22.1 (25 Sep. 1986).

We are satisfied that restriction tantamount to confinement constitutes a form of pretrial restraint which, if inaccurately reported to the court-martial, would render such data materially inadequate, incomplete, and specifically objectionable. Accordingly, we hold that R.C.M. 1001(b)(1), to include its waiver provision, is applicable to questions regarding restriction tantamount to confinement. The military judge's inquiry into the accuracy of the data concerning restraint on the charge sheet affords defense counsel a full and fair opportunity to challenge the accuracy of such data. *See* Department of Army Pamphlet 27–9, Military Judges' Benchbook, para. 2–34 (15 Feb. 1985). Further, we are confident that defense counsel, as officers of the court, will provide the court any information potentially raising the issue of restriction tantamount to confinement.

**6.** We believe that this ninety-day time period is sufficient to allow trial defense counsel to respond to our mandate, and also to allow appellant an adequate opportunity to petition the Court of Military Appeals either to temporarily or permanently prevent our mandate from issuing.

*Smith,*[7] 20 M.J. 528; *Wiggins v. Greenwald,*[8] 20 M.J. 823 (A.C.M.R.), *writ appeal denied,* 20 M.J. 196 (C.M.A.1985), *findings aff'd, sent. modified on other grounds sub nom., United States v. Wiggins,* CM 446655 (A.C.M.R. 20 May 1985) (unpub.); and *Washington v. Greenwald,*[9] 20 M.J. 699 (A.C.M.R.), *writ appeal denied,* 20 M.J. 324 (C.M.A.1985), *reaff'd sub nom. United States v. Washington,* CM 446797 (A.C.M.R. 3 July 1985) (unpub.), and conclude *ex abundanti cautela,* in view of the murky posture of the enclosed affidavits, the sound dictates of the judicial economy doctrine, and appellant's release from post-trial confinement prior to the date of this decision, that appellant should be granted an eleven-day pay credit[10] for restriction tantamount to confinement—specifically, one day's credit for 28 January 1985 and ten day's credit for the period of tightened restriction in April 1985. Otherwise, the conditions of appellant's restriction were not tantamount to confinement. Thus, Specified Issue I is answered in part in the affirmative and in part in the negative.

We again affirm the findings of guilty and the sentence, except that appellant shall be granted an eleven day administrative pay credit against the sentence to forfeitures for that period of pretrial restriction deemed tantamount to confinement.

Senior Judge RABY concurs.

CARMICHAEL, Judge, concurring:

Admittedly *United States v. Smith,* 20 M.J. 528 (A.C.M.R.), *petition denied,* 21 M.J. 169 (C.M.A.1985), and its progeny have enhanced the perception of the military justice system as one that is eminently fair in protecting the rights of the soldier. This line of cases has served to alert commanders, staff judge advocates and counsel to the consequences of pretrial restriction which severely curtails an accused's freedom of movement. Furthermore, these cases have provided commanders and judge advocates with the necessary factual basis to gauge the practical meaning of poet Richard Lovelace's observation that "stone walls do not a prison make, nor iron bars a cage."

7. *Smith,* 20 M.J. at 530, reads in pertinent part as follows:

 The terms of this restriction, which were ... [determined to be tantamount to confinement], prohibited the appellant from: using the phone without the permission of and in the presence of designated individuals; ... performing normal duties; leaving his building without both express authorization and an escort; [and from] having visitors except between 1800 and 2000 hours on duty days and 1400–1800 hours on non-duty days in the first sergeant's office in the presence of the charge of quarters.... Further, ... appellant was required to: perform duties assigned by the company commander and first sergeant; sign in with the charge of quarters every 30 minutes between 1700 and 2200 hours on duty days and between 0800 and 2200 hours on non-duty days; remain in his barracks room between 2200 and 0530 hours on duty days and between 2200 and 0800 hours on non-duty days; and leave his barracks room door unlocked while in his room.

8. Restriction was held not tantamount to confinement where appellant was required to sign in every two hours during duty hours, every hour during evenings until he went to bed, every four hours on weekends, and was restricted to the first floor of a barracks which contained a day room equipped with television and video games where he was permitted to receive visitors. He was out-processing and thus performed no military duties or physical training, but required an escort for out-processing and for trips to the legal office, dining facility, chapel and medical facility.

9. Restriction was held not tantamount to confinement where appellant was restricted to the company area, his place of duty, the messhall, and the chaplain's office. If he obtained permission to leave and was accompanied by an escort, he was allowed to go to any place on post during non-duty hours and non-duty days. He was restricted to a billets room after 2200 hours but had unrestricted visitation privileges and phone use. He was required to sign in with the Charge of Quarters hourly when he was not at work.

10. We choose to substitute an eleven-day pay credit against the sentence to forfeitures for an eleven-day credit against the sentence to confinement as we do not believe that we could otherwise grant meaningful relief. *Cf.* R.C.M. 305(k) ("For purposes of this subsection, 1 day of confinement shall be equal to 1 day of total forfeitures....").

However, *Smith* and its progeny also have provided a fertile ground for post-trial appellate litigation, necessitating submission of affidavits and various other documents. This cumbersome procedure should end with the court's extension of the waiver doctrine to the area of restriction tantamount to confinement in future cases, a rule which I highly favor. But I would suggest that military judges adopt the following procedure where the front page of the charge sheet reflects a form of pretrial restraint other than confinement. After reviewing or being informed of the pertinent data on the charge sheet, the military judge should not only ask the defense counsel whether the information is correct, but whether the defense is satisfied that the pretrial restraint was not tantamount to confinement. Adoption of this procedure will result in the issue being litigated at trial or being expressly waived.

## APPENDIX A

| SWORN STATEMENT |||||
|---|---|---|---|---|
| For use of this form, see AR 190-45; the proponent agency is Office of The Deputy Chief of Staff for Personnel. |||||
| LOCATION | DATE | TIME || FILE NUMBER |
| FORT RILEY, KANSAS 66442 | 8 Nov 85 ||| |
| LAST NAME, FIRST NAME, MIDDLE NAME | SOCIAL SECURITY NUMBER. || GRADE/STATUS ||
| ECOFFEY, RICHARD D. | 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 || PVT ||
| ORGANIZATION OR ADDRESS |||||
| 4th Company, US Army Correctional Activity, Fort Riley, Kansas 66442 |||||

I, **Richard D. Ecoffey**, WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

I am writing to request a possible reduction of my sentence due to pretrial confinement restriction. In two seperate written orders I was restricted from February 7 to May 15 1985. The orders were read by the previous A-Troop Commander, CPT Antee. After a few questions, I signed the orders. The conditions were as follows: Restricted to building 14?, the barracks with mess hall) with the exception of duty hours. It was then expanded to unit area. Only with escort (unarmed) was I allowed to leave the building; Restricted from all post facilities (PX, gym, and bowling alley) although I was allowed to be escorted to church and to talk with CPT Thompson, my lawyer. Both of these places were located on post. All my civilian attire was placed off limits; even though I was restricted to the building, I was not allowed in any room but my own, and no one but the personnel residing in the room were allowed in; I was to receive all visitors at the CQ desk at his discretion the telephone privileges, both in-coming and out-going were also left up to the CQ. From 7 February to the first part of April I was to sign in at the CQ desk every hour until I went to sleep; between 5 April and May 15 a separate guard roster was made and a guard was assigned to me 24 hours at a time. I was not even allowed to use the latrine without that guard. He was always an E-5 or above. My duties were as follows: February 7 to April 5, I was assigned to Staff SGT White during duty hours. I did not perform regular duties. I was involved in what came to be called the Chapter Platoon; where preparation for termination was all that was done (clean TA-50, payment of bills, etc.). From April 5 to May 15, I did not perform any duties, was escorted to formation and back to my room. My sleeping accommodatons were as follows: When released from pretrial confinement on 7 February (from Pearl Harbor Brigade) I was moved from my room to a room without windows; I spent the 28th of January in a bed in the hall adjacent to the CQ desk.

The date in April is an on or about date when a guard was permanently assigned to me; the exact date is only an obtainable through the Commander issuing the restriction/confinement.

My incoming and outgoing calls were screened by the CQ as to whom was calling or whom I was calling; why they were calling or why I was calling; then the CQ would determine if I needed to call the individual or if it was necessary to receive their call.

*Defense Appellate Exhibit A*

| EXHIBIT | INITIALS OF PERSON MAKING STATEMENT | PAGE 1 OF 1 PAGES |
|---|---|---|

ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT OF___ TAKEN AT___ DATED___ CONTINUED." THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT AND BE INITIALED AS "PAGE___ OF___ PAGES." WHEN ADDITIONAL PAGES ARE UTILIZED, THE BACK OF PAGE 1 WILL BE LINED OUT, AND THE STATEMENT WILL BE CONCLUDED ON THE REVERSE SIDE OF ANOTHER COPY OF THIS FORM.

**DA FORM 2823** JUL 72 SUPERSEDES DA FORM 2823, 1 JAN 68, WHICH WILL BE USED.

Defense Appellate Exhibit A

STATEMENT (Continued)

## AFFIDAVIT

I, RICHARD D ECOFFEY HAVE READ OR HAVE HAD READ TO ME THIS STATE-
MENT WHICH BEGINS ON PAGE 1 AND ENDS ON PAGE_____ . I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT
MADE BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE
CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY WITHOUT HOPE OF BENEFIT OR REWARD, WITHOUT THREAT
OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFLUENCE, OR UNLAWFUL INDUCEMENT.

_Richard D Ecoffey_
(Signature of Person Making Statement)

WITNESS

Subscribed and sworn to before me, a person authorized by law
to administer oaths, this 8TH day of NOVEMBER , 19 85

ORGANIZATION OR ADDRESS

at RILEY COUNTY, STATE OF KANSAS SS

_Elizabeth S. Johnson_
(Signature of Person Administering Oath)

ELIZABETH S, JOHNSON
(Typed Name of Person Administering Oath)

ORGANIZATION OR ADDRESS

NOTARY PUBLIC (COMMISSION EXPIRES: 5 AUG
1989
(Authority To Administer Oaths)

INITIALS OF PERSON MAKING STATEMENT
RDE

PAGE OF PAGES

☆ U.S. G.P.O. 1980-665141/1344

APPENDIX B

**SWORN STATEMENT**
For use of this form, see AR 190-45; the proponent agency is Office of The Deputy Chief of Staff for Personnel.

| LOCATION | DATE | TIME | FILE NUMBER |
|---|---|---|---|
| Building #580, Schofield Barracks, Hawaii | 13 May 86 | 0745 | |

| LAST NAME, FIRST NAME, MIDDLE NAME | SOCIAL SECURITY NUMBER. | GRADE/STATUS |
|---|---|---|
| ANTEE, TERRY GLENN | 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 | CPT |

| ORGANIZATION OR ADDRESS |
|---|
| HHT, 3/4 Cav, Schofield Barracks, HI |

I, <u>TERRY G. ANTEE</u>, WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

I, Captain Terry G. Antee, believe these facts to be true to the best of my knowledge regarding Private Richard D. Ecoffey from 7 February to 15 May 1985. Private Ecoffey was released from pretrial on 7 May 1985. Within the next week, he was late to work and disrespectful to the noncommissioned officers and officers in his chain of command. He was given an Article 15 and placed on restriction. I departed for Korea for Team Spririt 1985 approximately 12 February 1985 and left Private Ecoffey under the control of Sergeant First Class Ackman. He was on restriction at the time with limitations to his place of duty, place of worship, and counsel. He was not permitted to wear civilian attire. After my return approximately 3 April 1985, I was informed that Private Ecoffey was continually breaking restriction and causing problems. He could not be relied upon to follow instructions and was seen by myself on one occasion trying to get back into the billets at approximately 0500 hours. As a result, an unarmed guard was instituted to watch and escort Private Ecoffey. This lasted approximately ten days from 10 April to 20 April. Private Ecoffey was permitted to go any place he needed to go, on or off post, as long as he was escorted. This system was instituted as a result of my belief that he was a definite flight risk. He had attempted to depart the island prior to pretrial confinement. His actions made me believe he would do it again. The guard system was causing too many hardships on the platoon and was dropped approximately ten days after it started. Private Ecoffey was then put under the control of the charge of quarters throughout the remainder of his time in the unit. He was, at that time, restricted to the limits of the squadron but it was not enforced since he continually broke restriction. Although he did not perform regular training with the unit, Private Ecoffey was given duties within the unit to perform.
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX NOTHING FOLLOWS XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

| EXHIBIT | INITIALS OF PERSON MAKING STATEMENT | PAGE 1 OF 1 PAGES |
|---|---|---|
| | *JGA* | |

ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT OF ___ TAKEN AT___ DATED ___ CONTINUED." THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT AND BE INITIALED AS "PAGE___OF___PAGES." WHEN ADDITIONAL PAGES ARE UTILIZED, THE BACK OF PAGE 1 WILL BE LINED OUT, AND THE STATEMENT WILL BE CONCLUDED ON THE REVERSE SIDE OF ANOTHER COPY OF THIS FORM.

DA FORM JUL 72 2823 SUPERSEDES DA FORM 2823, 1 JAN 68, WHICH WILL BE USED.

Government Appellate Exhibit 1

STATEMENT (Continued)

**AFFIDAVIT**

I, ___TERRY G. ANTEE___ HAVE READ OR HAVE HAD READ TO ME THIS STATE-
MENT WHICH BEGINS ON PAGE 1 AND ENDS ON PAGE __1__ . I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT
MADE BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE
CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY WITHOUT HOPE OF BENEFIT OR REWARD, WITHOUT THREAT
OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFLUENCE, OR UNLAWFUL INDUCEMENT.

_____
(Signature of Person Making Statement)

WITNESSES:

Subscribed and sworn to before me, a person authorized by law
_____ to administer oaths, this _13th_ day of ____May____ , 19 _86_

_____ at __Building #580, Schofield Barracks, HI__

ORGANIZATION OR ADDRESS

_____ _____
(Signature of Person Administering Oath)

_____ ___PATRICK J. PARRISH___
(Typed Name of Person Administering Oath)

ORGANIZATION OR ADDRESS __CPT, JA, Article 136, UCMJ__
(Authority To Administer Oaths)

INITIALS OF PERSON MAKING STATEMENT

| | PAGE | OF | PAGES |

☆U.S. G.P.O. 1983-421-646/8030

## APPENDIX C

**SWORN STATEMENT**
For use of this form, see AR 190-45; the proponent agency is Office of The Deputy Chief of Staff for Personnel.

| LOCATION | DATE | TIME | FILE NUMBER |
|---|---|---|---|
| | | | |

| LAST NAME, FIRST NAME, MIDDLE NAME | SOCIAL SECURITY NUMBER. | GRADE/STATUS |
|---|---|---|
| ANTEE, TERRY GLENN | 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 | CPT |

**ORGANIZATION OR ADDRESS**
Dept. of Military Science, Sam Houston State Univ., Huntsville, Texas 77341

I, Terry G. Antee _____, WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH

I, Captain Terry G. Antee, believe these facts to be true to the best of my knowledge regarding Private Richard D. Ecoffey from 7 February to 15 May 1985. This affidavit supplements the affidavit executed by me on 13 May 1986 regarding Private Ecoffey. Private Ecoffey was initially restricted due to an Article 15 given him by me. This restriction lasted 14 days. During the 14 days, Private Ecoffey was restricted to his place of duty, place of worship, and counsel's office. After the initial 14 days of restriction, Private Ecoffey was allowed to go anywhere he needed to go as long as he was escorted by an E-5 or above. From 7 February to 15 May 1985, Private Ecoffey performed duties within the unit. Private Ecoffey and one other soldier occupied a billets room. Other soldiers were not assigned to the room due to its unhealthy condition caused by Private Ecoffey and his roommate. The Charge of Quarters controls telephone use for all soldiers because the telephone is a business phone. Private Ecoffey's restriction did not affect his telephone privileges.
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXNOTHING FOLLOWSXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

| EXHIBIT | INITIALS OF PERSON MAKING STATEMENT | PAGE 1 OF 1 PAGES |
|---|---|---|
| | | |

ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT OF ___ TAKEN AT ___ DATED ___ CONTINUED." THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT AND BE INITIALED AS "PAGE ___ OF ___ PAGES." WHEN ADDITIONAL PAGES ARE UTILIZED, THE BACK OF PAGE 1 WILL BE LINED OUT, AND THE STATEMENT WILL BE CONCLUDED ON THE REVERSE SIDE OF ANOTHER COPY OF THIS FORM.

DA FORM 2823, JUL 72 SUPERSEDES DA FORM 2823, 1 JAN 66, WHICH WILL BE USED.

Government Appellate Exhibit 2

STATEMENT (Continued)

**AFFIDAVIT**

I, __Terry G. Antee__ HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT WHICH BEGINS ON PAGE 1 AND ENDS ON PAGE __1__ . I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY WITHOUT HOPE OF BENEFIT OR REWARD, WITHOUT THREAT OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFLUENCE, OR UNLAWFUL INDUCEMENT.

_(Signature of Person Making Statement)_

WITNESSES:

Subscribed and sworn to before me, a person authorized by law to administer oaths, this __28__ day of __JULY__ , 19 __86__ at __SAM HOUSTON STATE UNIVERSITY, DEPT OF MILITARY SCIENCE__

ORGANIZATION OR ADDRESS

_(Signature of Person Administering Oath)_

Keith A. Prewitt
MAJ, IN
_(Typed Name of Person Administering Oath)_

ORGANIZATION OR ADDRESS

DEPT OF MIL SCIENCE , EXECUTIVE OFFICER
_(Authority To Administer Oaths)_

INITIALS OF PERSON MAKING STATEMENT

PAGE OF PAGES

☆ U.S. Government Printing Office: 1980—319-001/8848

APPENDIX D

**SWORN STATEMENT**
For use of this form, see AR 190-45; the proponent agency is Office of The Deputy Chief of Staff for Personnel.

| LOCATION | DATE | TIME | FILE NUMBER |
|---|---|---|---|

| LAST NAME, FIRST NAME, MIDDLE NAME | SOCIAL SECURITY NUMBER. | GRADE/STATUS |
|---|---|---|
| ANTEE, TERRY GLENN | 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 | CPT |

**ORGANIZATION OR ADDRESS**
Dept. of Military Science, Sam Houston State Univ., Huntsville, Texas 77341

I, __Terry G. Antee__, WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

Private Ecoffey was released from pretrial confinement on 7 February 1985. During the next week, Private Ecoffy was late to work and disrespectful to the noncommissioned officers and officers in his chain of command. Because of this lateness and disrespect, I gave Private Ecoffy an Article 15. This Article 15 was not summarized but was a company grade, long form Article 15. I do not remember the exact date the Article 15 was given or whether it was appealed. A copy of the Article 15 was placed in Private Ecoffey's unit file. However, I directed that the unit file be destroyed once Private Ecoffey left the unit. Destruction of obsolete files was routinely done every three months at the unit. Fourteen days of Private Ecoffey's restriction was due to this Article 15.

During the Article 15 restriction and until 15 May 1985, except for the ten day period of 10-20 April 1985, the terms of appellant's restriction were these: Appellant was restricted to his barracks, mess hall, place of duty, place of worship, and counsel's office. In other words, Private Ecoffey could go to his barracks, mess hall, place of duty, place of worship, and counsel's office without an escort. Private Ecoffey was allowed to go beyond these specified places, on or off post, only if he was escorted by a soldier in the grade of E-5 or above. Private Ecoffey was not permitted to wear civlian attire since he was considered a flight risk. Private Ecoffey did not perform his regular military duties but did perform duties within the unit.

Private Ecoffey was also required to sign-in with the Charge of Quarters. ~~This this requirement only lasted approximately two days at themest.~~ The sign-in was not required while Private Ecoffey was performing duties but was required whenever Private Ecoffey left the barracks or hourly. I do not remember the exact dates that the sign-in occurred.

During 10-20 April 1985, an unarmed guard was instituted to watch and escort Private Ecoffey. This guard system lasted only ten days because it was causing too many hardships on the platoon. During this ten day period, Private Ecoffey still performed duties within the unit and was not allowed to wear civilian attire. The reason I instituted this guard system was because of Private Ecoffey's behavior. Specifically, he would not follow instructions and continually broke restriction. On one occasion, I witnessed Private Ecoffey attempting to gain entrance to his billets at approximately 0500 hours. Furthermore, Private Ecoffey's behavior convinced me that he was a definite flight

| EXHIBIT | INITIALS OF PERSON MAKING STATEMENT | PAGE 1 OF 2 PAGES |
|---|---|---|
| | JBA | |

ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT OF___ TAKEN AT___ DATED___ CONTINUED." THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT AND BE INITIALED AS "PAGE___ OF___ PAGES." WHEN ADDITIONAL PAGES ARE UTILIZED, THE BACK OF PAGE 1 WILL BE LINED OUT, AND THE STATEMENT WILL BE CONCLUDED ON THE REVERSE SIDE OF ANOTHER COPY OF THIS FORM.

DA FORM 2823 JUL 72 SUPERSEDES DA FORM 2823, 1 JAN 68, WHICH WILL BE USED.

Government Appellate Exhibit 3

**STATEMENT (Continued)**

risk. He had attempted to depart the island prior to pretrial confine-
ment, and I believed that he would try to leave again. There were two
reasons Private Ecoffey remained on restriction after the Article 15
time period (14 days). First, Private Ecoffey did not comply with the
terms of his Article 15 restriction. Second, I believed Private Ecoffey
was a flight risk.

From 7 February to 15 May 1985, Private Ecoffey shared a billets
room with one other soldier. Because Private Ecoffey and his roommate
kept the room in an unhealthy condition, other soldiers were not assign-
ed to the room.

The Charge of Quarters controlled telephone use in the billets
because the phone is considered a business phone.

The following recreational facilities were located on post: theater,
bowling alley, gymnasium.
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXNOTHING FOLLOWSXXXXXXXXXXXXXXXXXXXXXXXXXXXX

**AFFIDAVIT**

I, _TERRY G ANTEE_ HAVE READ OR HAVE HAD READ TO ME THIS STATE-
MENT WHICH BEGINS ON PAGE 1 AND ENDS ON PAGE _2_ . I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT
MADE BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE
CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY WITHOUT HOPE OF BENEFIT OR REWARD, WITHOUT THREAT
OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFLUENCE, OR UNLAWFUL INDUCEMENT.

(Signature of Person Making Statement)

**WITNESSES:**

Subscribed and sworn to before me, a person authorized by law
to administer oaths, this _10_ day of _Sept_ , 19 _86_
at _SAM HOUSTON STATE UNIVERSITY, Huntsville TX_

**ORGANIZATION OR ADDRESS**

(Signature of Person Administering Oath)

_KEITH A PREWITT MAJ IN_
(Typed Name of Person Administering Oath)

**ORGANIZATION OR ADDRESS**

_ADJUTANT_
(Authority To Administer Oaths)

**INITIALS OF PERSON MAKING STATEMENT**

PAGE _2_ OF _2_ PAGES

U.S. Government Printing Office: 1989—319-001/0848

APPENDIX E

**SWORN STATEMENT**
(For use of this form, see AR 190-30; the proponent agency is Office of The Provost Marshal General.

| LOCATION | DATE | TIME | FILE NUMBER |
|---|---|---|---|
| SAM HOUSTON STATE UNIV, Huntsville TX | 22 Sept 86 | 1100 | |

| LAST NAME, FIRST NAME, MIDDLE NAME | SOCIAL SECURITY NUMBER. | GRADE/STATUS |
|---|---|---|
| ANTEE TERRY GLENN | 449020920 | O-3 |

ORGANIZATION OR ADDRESS
3 ROTC Region, Sam Houston STATE University, Huntsville Texas 77341

I, **TERRY G ANTEE**, WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

Because of the charges pending against PVT Ecoffey (seven specifications relating to drugs, one specification of absence without leave, and one specification of disrespect to a superior noncommissioned officer) and the fact that he had gone A.W.O.L. and was prepared to leave the island, I considered. PVT Ecoffey a flight risk and ordered him into pretrial confinement on 23 January 1985. The night prior to going into pretrial, he did sleep on a cot next to the CQ's desk. The magistrate did not agree and therefore PVT Ecoffey was released from pretrial confinement on 7 February 1985. I asked for CPT Parrish's advice (from the SJA's office) on how I could keep PVT Ecoffey under control since I could not keep him in pretrail. Based on the conversation, I put PVT Ecoffey on restriction. On 7 February 1985, I called PVT Ecoffey into my office and verbally detailed the terms of the restriction I was imposing on him. A couple of days later, before I went to Korea, I put the terms of his restriction on a counseling form. After reading the limits of his restriction, I had PVT Ecoffey sign the counselling form. From 7 February to about 5 April 1985, PVT Ecoffey was restricted to the Troop Area except during duty hours. Otherwise, PVT Ecoffey was allowed to go to the mess hall, place of worship, and see his attorney, CPT Thompson, if escorted (E-5 and above). He was also informed, that he could go to the commissary, PX, or other places as long as he coordinated with the 1SG or myself prior and was escorted. Per his initial instructions, he was to report to the Charge of Quarters (CQ) when departing his room during non duty hours. The CQ would then log in the time of his departure and return. PVT Ecoffey was not allowed to wear civilian clothes so that he would not be able to mingle with the civilian population. He was moved into a room that was in the center of the billets with another individual being discharged. No other soldiers were allowed to move into this room primarily because of sanitary reasons. To the best of my knowledge, this room may not have had windows that opened to the Lanai. ~~On weekends, PVT Ecoffey was not allowed to leave the troop area without an escort. PVT Ecoffey's visitors would have to report to the CQ and the visits took place in the area of the lanai.~~ On weekends, PVT Ecoffey was not allowed to leave the troop area without an excort. PVT Ecoffey's visitors had to report to the CQ and the visits took place in the area of the lanai or the day room. ~~As it is allowed,~~ The phone controlled by the CQ was placed off limits to PVT Ecoffey. Pay phones were available in the building. These policies were for all soldiers in the barracks. Initially, PVT Ecoffey only had to notify the CQ prior to visits or phone calls. During my trip

| EXHIBIT | INITIALS OF PERSON MAKING STATEMENT | PAGE 1 OF 2 PAGES |
|---|---|---|
| | | |

*ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT OF___ TAKEN AT___ DATED___ CONTINUED."*
*THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT AND*
*BE INITIALED AS "PAGE___OF___PAGES." WHEN ADDITIONAL PAGES ARE UTILIZED, THE BACK OF PAGE 1 WILL*
*BE LINED OUT, AND THE STATEMENT WILL BE CONCLUDED ON THE REVERSE SIDE OF ANOTHER COPY OF THIS FORM.*

**DA FORM JUL 72 2823** SUPERSEDES DA FORM 2823, 1 JAN 68, WHICH WILL BE USED.

Defense Appellate Exhibit B

to Korea, PVT Ecoffey was placed under the control of the rear detachment NCOIC, SFC Ackman. PVT Ecoffey was assigned to SSG White during a portion of that time until he PCS'ed. SSG White was in charge of the Chapter Platoon, which was made up of soldiers waiting to be separated from the Army. PVT Ecoffey was assigned to this platoon because I did not want him to mix with other members of the unit. PVT Ecoffey was given details which included grass cutting, sweeping, painting, and cleaning his TA-50 gear.

When I returned from Korea in early April, I was told that PVT Ecoffey frequently broke his restrictions, and was disrespectful. I observed him walking towards the barracks in civilian clothes at approximately 0500 hours. As a result of his misconduct, I gave PVT Ecoffey an Article 15. As a result of his continually breaking his restriction orders, he was told to check in with the CQ after duty hours once an hour until he went to sleep. Once again, he continued to break the restriction and so I had the 1SG place NCO's, unarmed, in a position to supervise him for 24 hours a day. After about 10 days, I dropped this due to hardships placed upon the NCO's. The CQ was then required to check on him frequently to insure he remained in the billets during non duty hours. At no time was PVT Ecoffey denied the opportunity to go to the PX, commissary, or other places as needed. He was however required to be escorted. Although I cannot remember the exact time, about two weeks prior to his trial date, he was not given duties, but was escorted to his room when he was not at a designated appointment.

---

**AFFIDAVIT**

I, _TERRY G ANTEE_ HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT WHICH BEGINS ON PAGE 1 AND ENDS ON PAGE _2_ . I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY WITHOUT HOPE OF BENEFIT OR REWARD, WITHOUT THREAT OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFLUENCE, OR UNLAWFUL INDUCEMENT.

_(Signature of Person Making Statement)_

**WITNESSES:**

Subscribed and sworn to before me, a person authorized by law to administer oaths, this _22_ day of _SEPT_ , 19 _86_ at _Huntsville, TEXAS_

**ORGANIZATION OR ADDRESS**

_(Signature of Person Administering Oath)_

KEITH A. PRUITT MAJ IN
_(Typed Name of Person Administering Oath)_

**ORGANIZATION OR ADDRESS**

ADJUTANT
_(Authority To Administer Oath)_

**INITIALS OF PERSON MAKING STATEMENT**

PAGE _2_ OF _2_ PAGES

GPO: 1972 780-500/1019