**UNITED STATES, Appellee,**

v.

**Private E–1 Glenn D. HOOVER, 213–88–3475, United States Army, Appellant.**

**ACMR 8600790.**

U.S. Army Court of Military Review.

13 Aug. 1987.

For Appellant: Major Marion E. Winter, JAGC, Captain Stewart C. Hudson, JAGC, Captain Joseph Tauber, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Captain Gary L. Hausken, JAGC, Captain Vito A. Clementi, JAGC (on brief).

Before HOLDAWAY, De GIULIO and KENNETT, Appellate Military Judges.

## OPINION OF THE COURT

De GIULIO, Judge:

Appellant was tried by a military judge sitting as a special court-martial. He pled guilty and was found guilty of possession of marijuana, use of marijuana, possession and use of a false pass, drunk and disorderly, and negligent damage of military property. He was sentenced to a bad-conduct discharge, confinement for three months and forfeiture of $426.00 pay per month for three months. Pursuant to a pretrial agreement, the convening authority reduced the confinement and forfeiture period to 90 days but otherwise approved the sentence.

This court specified two issues:

## I

WHETHER REQUIRING APPELLANT, PRIOR TO TRIAL, TO LIVE IN A "PUP TENT" SURROUNDED BY CONCERTINA WIRE WAS RESTRICTION TANTAMOUNT TO CONFINEMENT?

## II

WHETHER REQUIRING APPELLANT, PRIOR TO TRIAL, TO LIVE IN A "PUP TENT" SURROUNDED BY CONCERTINA WIRE WAS ILLEGAL PRIOR PUNISHMENT?

We hold that the restraint was restriction tantamount to confinement and that it was intended to be punishment for appellant.

The facts necessary to determine the specified issues are as follows: On 24 June 1986 appellant had a party in his barracks room. He drank twelve beers and several glasses of wine. Appellant and his party guests were loud and boisterous, and their noise prevented other soldiers from sleeping. During the party, appellant became angry and smashed beer bottles against his barracks room wall causing numerous gouges in the wall. The offenses of drunk and disorderly and damage to government property were the result of this misconduct. Subsequent to the offenses but prior to trial, appellant was forced to live in a pup tent surrounded by concertina wire. At trial, the company commander described the rigors of how appellant was to live:

"My instructions were that Private Hoover, for the abuse of the room and the state that it was in, would go to a field environment so that he could appreciate the room. In the field environment, we decided that we would make it as we do when we go to the field, i.e. that he would be setting up the pup tent, he would set up wire around it and he would camouflage the pup tent and wire.... [He] would tear everything down in the morning and then he would set everything up in a different—out on the lawn, just not in the same spot, that evening.... [S]ince he had to do punishment under another field grade,[1] we figured that he would probably be off at 10 in the evening, 2200 and at that time he would go to the field, set up his equip-

---

[1] Appellant was undergoing Article 15, Uniform Code of Military Justice, punishment for misconduct unrelated to the offenses tried by this court-martial. His punishment included restriction to the company area for forty-five days and extra duty for forty-five days. It is clear from the record that his extra duty for the day was completed before he was required to erect the pup tent.

ment, and stay that way until about 4 a.m. when the CQ was to come out, wake him up ... so he could be getting prepared before his NCO came in, which was around five o'clock."

Appellant performed normal duties in the daytime. He could go to the barracks, dayroom, place of worship, dining facility "learning resource center," and gym. He was not required to "sign in." Appellant could not sleep in the barracks, however, and was to be escorted whenever he was outside the company area.

At trial, defense requested that the military judge give appellant credit for restriction tantamount to confinement and extra credit under R.C.M. 305(k).[2] The military judge elected to hear evidence and rule on this motion after the sentence was announced. He found that the requirements concerning living in the pup tent were extra training and denied the motion.

## I

### Corrective or Extra Training

With respect to corrective or extra training, the Manual for Courts-Martial, United States, 1984, Part V Nonjudicial Punishment Procedure, para. 1g provides,

*Relationship of nonjudicial punishment to administrative corrective measures.* Article 15 and Part V of this manual do not apply to, include, or limit use of administrative corrective measures that promote efficiency and good order and discipline such as counseling, admonitions, reprimands, exhortations, disapprovals, criticisms, censures, reproofs, rebukes, extra military instruction, and administrative withholding of privileges. *See also* R.C.M. 306. Administrative corrective measures are not punishment, and they may be used for acts or omissions which are not offenses under the code and for acts or omissions which are offenses under the code.

An Army regulation calls extra training one of the most effective nonpunitive disciplinary measures. Army Regulation 600–20, Personnel—General: Army Command Policy and Procedures, para. 5–6b (20 Aug. 1986) [hereinafter AR 600–20].[3] As an example, it states that if soldiers do not maintain their housing area properly, they will be required to correct the deficiency; it further provides that training given to soldiers to correct deficiencies not only must be directly related to the deficiency but must be oriented to improve the soldier's performance in the problem area. AR 600–20, para. 5–6c. Such measures assume the nature of training and not punishment. *Id.* Commanders are cautioned to insure that training is not used in an oppressive manner to evade the procedural safeguards of nonjudicial punishment. AR 600–20, para. 5–6d. Extra training is not to be used as a punitive measure and must be distinguished from punishment or even the appearance of punishment. Field Manual No. 27–1, Legal Guide for Commanders, para. 8–4 (18 May 1981). Finally, a deficiency which has been corrected by extra training is not to be noted in the official records of soldiers and is to be considered as closed. AR 600–20, para. 5–6d.

▋ Applying the regulatory provisions to the case before us, appellant was required to set up a pup tent and concertina wire and sleep there between the hours of 2200 and 0400 hours. It does not appear that he was required to "maintain" his barracks area properly. Instead he was moved to the pup tent and prohibited from sleeping in the barracks. We find little *direct* relationship to living in the pup tent and damage to government property. Additionally, the incident was not considered closed after completion of the training because it resulted in charges of damage of government property and drunk and disorderly, offenses which are, inter alia, before

2. Manual for Courts-Martial, United States, 1984, Rule for Courts-Martial 305(k) provides, in part, that, "Such credit shall be computed at the rate of 1 day credit for each day of confinement served as a result of such noncompliance [with R.C.M. 305(f), (h), (i), or (j)]. This credit is to be applied in addition to any other credit

the accused may be entitled as a result of pretrial confinement served."

3. Field Manual No. 27–1, Legal Guide for Commanders (18 May 1981), also discusses corrective training.

this court. Finally, forcing a soldier to sleep in a pup tent and prohibiting him from sleeping in an available barracks not only appears to be oppressive but has the appearance of punishment. The company commander's testimony that the extra training was so "he [appellant] could appreciate his room" is clearly indicative that the purpose was to punish appellant. We find, therefore, that under the circumstances of this case, requiring appellant to erect and live in a pup tent surrounded by concertina wire for three weeks between the hours of 2200 and 0400 was punishment. We hold that under the circumstances of this case, requiring appellant to live in a pup tent surrounded by concertina wire for three weeks between the hours 2200 and 0400 is such a restraint on his liberty as to amount to restriction tantamount to confinement.[4] *See United States v. Smith*, 20 M.J. 528 (A.C.M.R.1985), *petition denied*, 21 M.J. 169 (C.M.A.1985); *see also United States v. Gregory*, 21 M.J. 952 (A.C.M.R.1986), *affirmed*, 23 M.J. 246 (C.M.A.1986) (summary disposition).[5] Appellant, being held in restriction tantamount to confinement, was essentially a prisoner. R.C.M. 304(f) provides that prisoners being held for trial shall not be required to undergo punitive duty hours or training or perform punitive labor. We hold that appellant's extra training, *i.e.*, the erection of the pup tent and concertina wire, violated Article 13[6] and this provision. *See United States v. Bayhand*, 21 C.M.R. 84 (C.M.A.1956); *See also United States v. Nelson*, 39 C.M.R. 177 (C.M.A.1969).

## II

## Remedy

■ Having determined that appellant's extra training was punishment and was also restriction tantamount to confinement, we must determine what remedy to apply. Restriction tantamount to confinement entitles appellant to credit against his sentence to confinement. *United States v. Mason*, 19 M.J. 274 (C.M.A.1985) (summary disposition); *United States v. Smith.* Additional credit is to be applied where the pertinent provisions of R.C.M. 305 are violated. *United States v. Gregory;* R.C.M. 305(k). Where confinement has been served, credit shall be applied to forfeitures. R.C.M. 305(k). We need not, however, determine the credit to be applied as we elect to reassess the sentence. *See United States v. Suzuki*, 14 M.J. 491, 493 (C.M.A.1983); *United States v. Nelson*, 39 C.M.R. at 181.

■ Accordingly, the findings of guilty are affirmed. Reassessing the sentence in light of the error noted, only so much of the sentence is affirmed as provides for a bad-conduct discharge and confinement for three months.

Chief Judge HOLDAWAY and Judge KENNETT concur.

---

4. R.C.M. 304(a)(1) through (4) sets forth authorized forms of pretrial restraint. Restriction tantamount to confinement is not included within the forms of pretrial restraint described by that rule. We must conclude, therefore, that restriction tantamount to confinement is illegal. We have noted that those who impose such illegal restraint may violate Articles 93 and 97, Uniform Code of Military Justice, 10 U.S.C. §§ 893 and 897 (1982), and we have called upon those in authority to take action to preclude improper forms of pretrial restraint. *See United States v. Freeman*, 24 M.J. 547, 550 n. 4 (A.C.M.R.1987). *See also United States v. Berumen*, ACMR 8601281, slip op. at 8 n. 6 (A.C.M.R. 12 Jun 1987). We, again, reiterate that caution.

5. It is noted that trial counsel relied heavily upon *United States v. Amos*, 22 M.J. 798 (A.C.M.R.1986), arguing that *Gregory* credit is only applicable when the accused is actually locked in a confinement facility. It appears that the trial judge's denial of the defense motion also relied on *Amos*. We note that *Amos* was reversed by the United States Court of Military Appeals subsequent to this trial. *United States v. Amos*, 23 M.J. 272 (C.M.A.1986) (summary disposition).

6. Article 13, UCMJ, 10 U.S.C. § 813, provides,
    No person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him, nor shall the arrest or confinement imposed upon him be any more rigorous that the circumstances required to insure his presence, but he may be subjected to minor punishment during that period for infractions of discipline.